

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-4-1998

# Pavlik v. Lane Ltd/Tobacco

Precedential or Non-Precedential:

Docket 97-1121,97-1199

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

## Recommended Citation

"Pavlik v. Lane Ltd/Tobacco" (1998). *1998 Decisions.* Paper 24.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/24

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 4, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NOS. 97-1121 and 97-1199

GEORGE PAVLIK, Administrator of the Estate of
STEPHEN MICHAEL PAVLIK; GEORGE PAVLIK,
in His Own Right

v.

LANE LIMITED/TOBACCO EXPORTERS INTERNATIONAL,
Third-Party Plaintiff

v.

KEEN (WORLD MARKETING) LIMITED; GEORGE PAVLIK;
REGINA PAVLIK, h/w,
Third-Party Defendants

George Pavlik, Administrator of the Estate of
Michael Pavlik and George Pavlik, in his own right,
Appellant in No. 97-1121
(D.C. Civ. No. 95-cv-04582)

GEORGE PAVLIK, Administrator of the Estate of
STEPHEN MICHAEL PAVLIK, in his own right,
Appellant in No. 97-1199

v.

KEEN (WORLD MARKETING) LIMITED
(D.C. Civ. No. 96-cv-02221)

On Appeal From the United States District Court
For the Eastern District of Pennsylvania

Argued: September 22, 1997

Before: BECKER, Chief Judge,* SCIRICA, and McKEE,
Circuit Judges.

(Filed February 4, 1998)

JOANNE W. RATHGEBER, ESQUIRE
  (ARGUED)
Rathgeber & Associates
111 East Court Street
Doylestown, PA 18901
Attorney for Appellant George Pavlik

DENNIS L. PLATT, ESQUIRE
  (ARGUED)
JENNIFER S. BRESLIN, ESQUIRE
Sweeney & Sheehan, P.C.
1515 Market Street
Three Penn Center Plaza
Philadelphia, PA 19102
Attorneys for Appellee Lane Limited/
Tobacco Exporters International

JEFFREY N. GERMAN, ESQUIRE
  (ARGUED)
German, Gallagher & Murtagh
200 South Broad Street, Suite 500
Philadelphia, PA 19102
Attorney for Appellee,
Keen (World Marketing) Limited

OPINION OF THE COURT

BECKER, Chief Judge.

This is an appeal in a strict product liability case brought
by plaintiff George Pavlik, administrator of the estate of
Stephen Pavlik, a 20 year old man who died as the result

_____

*Judge Becker became Chief Judge as of February 1, 1998.

2

of self-administered butane inhalation. The district court granted summary judgment in favor of the defendants, Keen (World Marketing) Ltd. ("Keen") and Lane Limited/Tobacco Exporters International ("Lane"), the manufacturer and distributor respectively of "Zeus" brand butane fuel, the product that was close-at-hand when Stephen collapsed, and which plaintiff alleges to be the cause of Stephen's death. The butane was sold in 5.3 ounce cans, primarily as fuel for cigarette lighters. The only relevant warning, printed on the back panel of the can, reads "DO NOT BREATHE SPRAY". The gravamen of the plaintiff's claim is that the Zeus brand can is defective because this warning inadequately warns potential users like Stephen Pavlik of the extreme hazards of butane inhalation.

The district court held that the plaintiff's failure to warn claim fails for two reasons. First, the court determined that there was insufficient evidence in the record to prove that Stephen actually inhaled from the Zeus can on the night of his death, as opposed to the "Clipper" brand butane cans subsequently found buried in his bureau drawer. Alternatively, the court concluded that Stephen was already aware of the dangers of serious bodily injury associated with inhaling butane, and that a more specific warning would not have affected his conduct. The court reasoned that the alleged inadequate warning was therefore not the proximate cause of Stephen's injury. The court based this latter conclusion primarily on the fact that Stephen had also purchased and used cans of Clipper brand butane and therefore was presumed to have had notice of Clipper's more detailed warning.

We believe that both of these conclusions are flawed. First, there is scientific evidence in the record that the onset of Stephen's ultimately fatal reaction to the butane fumes could have been quite sudden, which, combined with evidence that only the Zeus can was in close proximity to him at the time the injury occurred, would permit a jury to infer that Stephen had in fact inhaled from the Zeus can. Second, we conclude that plaintiff has raised genuine issues of material fact on the defendant's proximate cause challenge.

3

Under Petree v. Victor Fluid Power, Inc., 831 F.2d 1191 (3d Cir. 1987), to succeed in their causation defense, defendants must demonstrate that Stephen was fully aware of the risk of bodily injury posed by Zeus butane prior to the accident. Plaintiff, however, has successfully undermined defendants' claim that the text of the Zeus and Clipper warnings provided sufficient notice to break the causal chain, and he has identified genuine issues of fact concerning alleged warnings given by Stephen's mother, the other evidence on which defendants' rely. In the absence of direct evidence about Stephen's knowledge of the serious consequences of butane inhalation, and given the inconclusiveness of what Stephen's mother is purported to have told him, there is a genuine issue of material fact on the causation issue, and hence we will reverse and remand with respect to the product liability claim.

We do, however, affirm the district court's grant of summary judgment on plaintiff's intentional infliction of emotional distress claim. We agree with the district court that there is insufficient evidence in the record to support a conclusion that defendants' conduct in this matter has been extreme and outrageous, the standard under Pennsylvania law for establishing that tort.

I. Background Facts and Procedural History

On April 10, 1994, at about 2:30 a.m., plaintiff George Pavlik was asleep on his sofa when he was awakened by the sound of his twenty-year-old son, Stephen, arriving home after having spent the evening with his sister and friends. Shortly thereafter, Mr. Pavlik heard a loud "thud" coming from an upstairs room. When he investigated this unusual sound, Pavlik found Stephen lying on the floor of his bedroom, gasping for breath. Pavlik immediately called the police and began to perform CPR. Paramedics soon arrived and unsuccessfully attempted to revive Stephen. He was pronounced dead later that morning.

The coroner listed the cause of Stephen's death as cardiac dysrhythmia complicating abusive hydrocarbon inhalation. It is uncontroverted that this was the result of Stephen's intentional inhalation of butane gas. At the time

of his death, a canister of Zeus brand butane was found atop Stephen's bedroom bureau. Warning language on the front of the Zeus can reads:

    DANGER
    CONTENTS EXTREMELY FLAMMABLE
    READ CAREFULLY OTHER CAUTIONS ON THE BACK
    PANEL

The warning label on the back panel of the can reads:

    PRESSURIZED CONTAINER:
    PROTECT FROM SUNLIGHT AND DO NOT EXPOSE TO
    TEMPERATURE EXCEEDING 120F. DO NOT PIERCE
    OR BURN, EVEN AFTER USE. DO NOT SPRAY ON A
    NAKED FLAME OR ANY INCANDESCENT MATERIAL.
    DO NOT USE NEAR FIRE OR FLAME OR WHILST
    SMOKING.
    DO NOT BREATHE SPRAY
    KEEP OUT OF REACH OF CHILDREN

Shortly after Stephen's death, Mr. and Mrs. Pavlik searched their son's room and found seven more cans of butane hidden under Stephen's underwear in a drawer of the bureau. Five of these cans were Zeus brand butane, and the other two bore the Clipper brand name. The back panel of the Clipper can warns:

    CAUTION:
    PRESSURIZED CONTAINER. PROTECT FROM
    SUNLIGHT AND DO NOT EXPOSE TEMPERATURE
    EXCEEDING 50C. DO NOT PIERCE OR BURN, EVEN
    AFTER USE. DO NOT SPRAY ONTO A NAKED FLAME
    OR ANY INCANDESCENT MATERIAL.

    USE ONLY DIRECT FILLING

    AEROSOL PRODUCT
    UN 1950
    LIGHTER REFILL
    CONTAINS BUTANE

    FLAMMABLE KEEP AWAY FROM SOURCES OF
    IGNITION—NO SMOKING.
    KEEP OUT OF REACH OF CHILDREN DELIBERATELY
    INHALING THE CONTENTS MAY BE HARMFUL OR
    EVEN FATAL.

5

In contrast to the Zeus can, the Clipper front panel contains no additional warning or language directing the user to consult the back panel.

Plaintiff filed the present lawsuit against Lane, the United States distributor of Zeus brand butane, alleging strict product liability for failure to warn and intentional infliction of emotional distress. Lane joined Keen as a third-party defendant. The manufacturer of Clipper brand butane is not a party to this lawsuit.

Following discovery, defendants moved for summary judgment. According to the defendants, Stephen's allegedly fatal inhalation was not his first attempt at inhaling butane. Rather, they characterize Stephen's conduct as an attempt to "get high" in deliberate disregard of all warnings. They contend that, on at least two prior occasions, Stephen had been caught in the act by his mother, and that on both occasions she had warned him that his abuse of butane was dangerous. Additionally, they contend that Mrs. Pavlik had threatened Stephen in 1992 that he would be thrown out of the family home if he continued his butane abuse. Accordingly, defendants argued that plaintiff could not establish that the alleged inadequate warning was the cause-in-fact and proximate cause of Stephen's death. Defendants further claimed that their conduct in allegedly failing to provide an adequate warning was not sufficiently extreme and outrageous to permit recovery for intentional infliction of emotional distress.

The district court granted the summary judgment motion on both counts. Plaintiff's motion for reconsideration was denied, and this timely appeal followed. The district court had jurisdiction under 28 U.S.C. S 1332. We have appellate jurisdiction over a final order of the district court pursuant to 28 U.S.C. S 1291. We set forth our familiar plenary standard of review of a grant of summary judgment in the margin.1 We explain the facts bearing on the present motion in greater detail infra.

_____

1. See Knabe v. Boury Corp., 114 F.3d 407, 410 n.4 (3d Cir. 1997) (noting plenary standard of review). The motion should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on

II. The Failure to Warn Claim

A. Section 402A

The Pennsylvania Supreme Court, whose law we are
bound to follow as a court exercising diversity jurisdiction,
has adopted S 402A of the Restatement (Second) of Torts,
which imposes strict liability on the purveyor of a product
in a defective condition "unreasonably dangerous to the
user or consumer." See Webb v. Zern, 220 A.2d 853 (Pa.
1966). Under S 402A, an otherwise properly designed
product may still be unreasonably dangerous (and therefore
"defective") for strict liability purposes if the product is
distributed without sufficient warnings to apprise the
ultimate user of the latent dangers in the product. See
Davis v. Berwind Corp., 690 A.2d 186, 190 (Pa. 1997).

To recover under S 402A, a plaintiff must establish: (1)
that the product was defective; (2) that the defect was a
proximate cause of the plaintiff's injuries; and (3) that the
defect causing the injury existed at the time the product left
the seller's hands. See id. (citing Berkebile v. Brantly
Helicopter Corp., 337 A.2d 893, 899 (Pa. 1975)). In the
context of a failure to warn case, to satisfy the second
prong, the plaintiff must establish that it was the total lack
or insufficiency of a warning that was both a cause-in-fact
and the proximate cause of the injuries. See Greiner v.
Volkswagenwerk Aktiengeselleschaft, 540 F.2d 85 (3d Cir.
1976); Conti v. Ford Motor Co., 743 F.2d 195, 197 (3d Cir.
1984). While the question of causation in Pennsylvania is
normally for the jury, "if the relevant facts are not in
dispute and the remoteness of the causal connection
between the defendant's negligence and the plaintiff's

_____

file, together with the affidavits, if any, show that there is no genuine
issue as to any material fact and that the moving party is entitled to
judgment as a matter of law." Fed. R. Civ. P. 56(c). The non-moving party
must adduce evidence "sufficient to establish the existence of [every]
element essential to that party's case, and on which that party will bear
the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322
(1986). In evaluating the sufficiency of this evidence, we must grant all
reasonable inferences from the evidence to the non-moving party. See
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

injury clearly appears, the question becomes one of law."
Conti, 743 F.2d at 197-98 (quoting Liney v. Chestnut
Motors, Inc., 218 A.2d 336, 338 (Pa. 1966)).

To reach a jury on a failure to warn theory of liability, the
evidence must be such as to support a reasonable
inference, rather than a guess, that the existence of an
adequate warning might have prevented the injury. See id.
at 197. As we develop infra, the plaintiff enjoys the benefit
of a rebuttable presumption that an adequate warning
would have been heeded if it had been provided; however,
one way the defendant can rebut this presumption is by
demonstrating that the plaintiff was previously fully aware
of the risk of bodily injury posed by the product. The
district court agreed with defendants that such a prior
awareness did exist in this case and that there was
insufficient evidence in the record to support a reasonable
inference that an adequate warning on the Zeus can might
have prevented Stephen Pavlik's death. Additionally, the
court held that plaintiff's S 402A claim fails for lack of
causation because there was insufficient evidence
demonstrating that Stephen even inhaled from the Zeus
can on the morning of April 10, 1994. We consider both
arguments below.

B. Did Stephen Inhale from the Zeus Can?

The district court held that summary judgment was
appropriate because a jury would have to speculate that it
was the Zeus can (as opposed to a Clipper can) from which
Stephen inhaled on the night of his death. The court found
that the only evidence in the record indicating that Stephen
inhaled Zeus butane was the fact that a Zeus can was
found on his bureau, while all the Clipper cans (plus other
Zeus cans) were found buried in his bureau drawer, and
that this alone was insufficient to create a genuine jury
question. We disagree.

Plaintiff points out that the onset of Stephen Pavlik's fatal
reaction had to have been sudden, and thus it was more
likely than not that he would neither have had the time nor
the wherewithal to bury the can that he actually had used
in his bureau drawer. Thus, plaintiff reasons that Stephen
must have inhaled from the Zeus can. As noted supra, we

8

must grant all reasonable inferences from the evidence in favor of the non-moving party; moreover there is evidence in the record that buttresses plaintiff's claim. For example, an article attached to the affidavit of Earl Siegel, Pharm.D., describes the potential for "sudden sniffing death" caused by butane abuse.[2] See App. at 359-60. In addition, the report prepared by Thomas J. Wallace, Ph.D., states that "[d]efendants are well aware of the negative consequences of Butane abuse and the fact that it can cause instant death." App. at 353. Although this evidence might not persuade a jury that Stephen's death was caused by the Zeus can, the inference plaintiff would have us draw is both logical and reasonable. One could reasonably (and easily) infer from these reports that it is more likely than not that it was the nearby Zeus can that triggered Stephen's death. Therefore, the district court should not have granted summary judgment on this ground.

## C. Would a Better Zeus Warning Have Deterred Stephen Pavlik?

The defendants' second argument in support of a grant of summary judgment in their favor is considerably more complicated. They contend (and the district court found) that there was insufficient evidence in the record to support a reasonable inference that a different warning on the Zeus canister would have led Stephen Pavlik to act differently. According to the defendants, Stephen had been previously warned of the dangers of butane inhalation from three

_____

2. In his brief to this court, plaintiff also cites a January 13, 1997, letter-
report by Dr. Siegel which states that inhalation of butane can cause death "within minutes". Appendix at 357. However, this document was not in the record when the district court decided the defendant's summary judgment motion. Plaintiff did attach the letter to his motion for reconsideration in the district court, but under our rule in Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), when evidence is not newly discovered, a party may not submit that evidence in support of a motion to reconsider a grant of summary judgment. Since Dr. Siegel's testimony was available (indeed, he even provided an affidavit which was attached as an exhibit) prior to the filing of the plaintiff's original answer
to the defendant's summary judgment motion, the January 13 letter should not have been considered in the motion for reconsideration and will not be considered here.

sources: (1) the warning on the Zeus can; (2) the warning on the Clipper can; and (3) his mother. Based on these combined warnings, the defendants contend that Stephen was already aware of the dangers associated with butane inhalation when he decided to inhale the contents of the Zeus can on the night of his death. The district court agreed and held that, even assuming that the Zeus warning was inadequate, there was no evidence in the record that an adequate warning would have had any deterrent value.

In support of their claim, the defendants rely on Conti, supra; Overpeck v. Chicago Pneumatic Tool Co., 634 F. Supp. 638 (E.D. Pa. 1986), aff'd, 823 F.2d 751 (3d Cir. 1987); and Powell v. J.T. Posey Co., 766 F.2d 131 (3d Cir. 1985). In all three of these cases, we concluded that the allegedly defective lack of an adequate warning could not have proximately caused the victim's injuries. In Conti and Overpeck, there was evidence in the record that the victim was already aware of the complained of danger prior to the time of the injury. In Powell, while the victim was not aware of the specific danger at issue prior to her injury, there was no evidence in the record that she would have changed her course of conduct had she been provided with the warning she sought, and, in fact, there was evidence specifically suggesting the contrary. The defendants nonetheless submit that the facts here compel the same conclusion we reached in Conti, Overpeck and Powell.

1. Proximate Cause in Failure to Warn Cases

Our precedents in this area of the law teach that, in a failure to warn case, we focus our causation analysis on the additional precautions that might have been taken by the end user had the allegedly defective warning been different. See Powell, 766 F.2d at 135. This analysis requires the fact finder at trial or a court on summary judgment to "consider not only what did occur, but also what might have occurred . . . . Such a determination as to what might have happened necessarily requires a weighing of probabilities." Remy v. Michael D's Carpet Outlets, 571 A.2d 446, 449–50 (Pa. Super. Ct. 1990) (citing Hamil v. Bashline, 392 A.2d 1280, 1286–87 (Pa. 1978)) (emphasis in original), aff'd sub nom. Kimco Dev. Corp. v. Michael D's Carpet Outlets, 637 A.2d 603 (Pa. 1993).

10

Comment j to S 402A is directed in part to this weighing process, providing that "[w]here a warning is given, the seller may reasonably assume that it will be read and heeded." Generally speaking, comment j sets forth a presumption that works in favor of the manufacturer or seller of a product where an adequate warning has been provided.3 See Coffman v. Keene Corp., 608 A.2d 416, 421 (N.J. Super. Ct. App. Div. 1992) ("Coffman I"), aff'd, 628 A.2d 710 (N.J. 1993) ("Coffman II"); Technical Chemical Co. v. Jacobs, 480 S.W.2d 602, 606 (Tex. 1972). From this, it follows logically that the law should also presume that, when no warning or an inadequate warning is provided, the end-user would have read and heeded an adequate warning had one been given by the manufacturer. See Coffman I, 608 A.2d at 421 (collecting cases following this logic); Wolfe v. Ford Motor Co., 376 N.E.2d 143, 147 (Mass. App. Ct. 1978) (holding that the failure to give an adequate warning "permits the inference that it would have alerted the user to the danger and forestalled the accident."); but cf. Coffman II, 628 A.2d at 717-18 (extension of comment j based more on public policy than logic). Indeed, many jurisdictions have construed comment j to provide just such a presumption, referred to generally as the "heeding presumption". See Coffman II, 628 A.2d at 720 (collecting cases); Allan E. Korpela, Annotation, Failure to Warn as Basis of Liability Under Doctrine of Strict Liability in Tort, 53 A.L.R.3d 239 (1974). This presumption assists the failure to warn plaintiff in satisfying his burden of showing proximate cause. See Coffman II, 628 A.2d at 719.

While comment j has been adopted in Pennsylvania, see Incollingo v. Ewing, 282 A.2d 206 (Pa. 1971), to date the Pennsylvania Supreme Court has not expressly decided whether the heeding presumption would apply under Pennsylvania's interpretation of S 402A. On two prior occasions we have discussed this question without

_____

3. It should be noted, however, that the comment j presumption will not apply in those cases in which it is alleged that the warning provided, while substantively adequate, suffers from communicative deficiencies (e.g. small or otherwise illegible type) and is thus unlikely to convey its
danger message to the user. We discuss this aspect of comment j infra at pages 18-19.

predicting how the Court would rule, see Petree, 831 F.2d at 1196 n.2, Overpeck, 823 F.2d at 756 & n.4; in those cases, we found that even if the heeding presumption existed, the defendants would have successfully rebutted it.

We now predict that Pennsylvania would adopt a rebuttable heeding presumption as a logical corollary to comment j. Since the very idea of imposing strict liability for the failure to warn is premised on the belief that the presence or absence of an adequate warning label will affect the conduct of a product user, it would be illogical, and contrary to the basic policy of S 402A, to accept that a product sold without an adequate warning is in a "defective condition", see Incollingo, while simultaneously rejecting the presumption that the user would have heeded the warning had it been given. Indeed, in its most recent (albeit limited) discussion of comment j, the Pennsylvania Supreme Court stated plainly that "the law presumes that warnings will be obeyed." Davis, 690 A.2d at 190. We predict, therefore, that Pennsylvania would agree that "[c]omment j provides ample support for application of the rebuttable `heeding' presumption . . . to assist a plaintiff in proving the absence of a warning proximately caused harm." Coffman, 608 A.2d at 422.

While the heeding presumption benefits a failure to warn plaintiff, it does not change the fact that he still bears the burden of persuasion on the causation prong of his S 402A claim. Accordingly, as we recognized in Petree and Overpeck, the heeding presumption must be rebuttable, and thus "[w]hen the opponent of the presumption has met the burden of production thus imposed . . . the office of the presumption has been performed; the presumption is of no further effect and drops from the case." Overpeck, 823 F.2d at 756 (citing Commonwealth v. Vogel, 268 A.2d 89 (Pa. 1970)). To get past the presumption and to a jury, the opponent of the presumption need only introduce evidence "sufficient to support a finding contrary to the presumed fact." See McCormick on Evidence S 344 (3d ed. 1984).

Applied to the present case, this means that if Lane and Keen can introduce evidence sufficient to support a finding that Stephen Pavlik was "fully aware of the risk of bodily injury, or the extent to which [his] conduct could contribute

12

to that risk, so as to be legally chargeable with the consequences," see Petree, 831 F.2d at 1196, then the presumption would be successfully rebutted and the burden of production would shift back to Pavlik to come forward with evidence demonstrating that an adequate warning would have changed Stephen's behavior. At that point, "only the facts or actual evidence from which the presumption arose remain, free from any artificial effect, to be considered along with other evidence." See Lynn v. Cepurneek, 508 A.2d 308, 312 (Pa. Super. Ct. 1986) (discussing general law of presumptions in Pennsylvania); 9 Wigmore on Evidence S 2487; cf. Overpeck, 823 F.2d at 756 & n.3 (Where "an inference that a warning would have reminded a user of a known danger is unsupported by independent evidence, such an inference is impermissible as mere jury speculation.").

To prevail on summary judgment, however, defendants must satisfy a more substantial burden. While they need only produce evidence sufficient to support afinding contrary to the presumed fact to rebut the presumption at trial, see supra, to satisfy Rule 56 the record must show that a reasonable fact finder would be bound tofind that Stephen Pavlik was fully aware of the risk of bodily injury; otherwise, we are presented with a genuine issue of fact for the jury. With this standard in mind, we turn now to determine whether the evidence cited by the defendants is sufficient to establish (to the extent just described) that Stephen Pavlik was fully aware of the risk of bodily injury posed by butane inhalation prior to his accident.

2. Mrs. Pavlik's Warnings

There is evidence in the record indicating that Stephen Pavlik's mother, who passed away approximately one year after Stephen's death, knew that her son had inhaled butane on at least two prior occasions, once in 1992 and again in 1994. The coroner's certificate of identification, for example, states that Mrs. Pavlik had caught Stephen inhaling butane about two years before his death, though she believed that he had since stopped. App. at 290. Stephen's sister, Theresa, also testified that Mrs. Pavlik had caught Stephen "doing something that's not right" with two cans of butane sometime in 1992, and that Mrs. Pavlik had

13

told Stephen that if he continued, he would be thrown out of the house. App. at 302-04.

In addition, Denise Johnson, a friend of Stephen's, testified that Mrs. Pavlik had informed her that she had caught Stephen inhaling butane:

> A:  . . . after Stephen's death, she had told me that he had used it previously.
> Q:  Who's the "she"?
> A:  Mrs. Pavlik.
>     . . .
> Q:  Was the topic of the use of the butane discussed [between you and Mrs. Pavlik] a lot?
> A:  No, not a lot, no. A couple times, but not a lot.
>     . . .
> Q:  Did Mrs. Pavlik indicate exactly what she said to, like her son when she caught him?
> A:  I believe she did, but I can't remember exact words. You know, it was a really long time ago.
> Q:  Do you remember any words to the effect that, "The stuff 's dangerous"?
> A:  Of course, yes.

Supplemental Appendix at 75b-77b.4 It is this statement upon which the defendants rely to show that Mrs. Pavlik had warned Stephen of the dangers of butane inhalation.

This evidence, however, is not uncontroverted. Theresa Pavlik consistently testified that Mrs. Pavlik did not know specifically what Stephen was doing with the cans of butane when the alleged 1992 incident occurred:

> Q: Did your mother ever ask you what is your brother doing with these cans?
> A: Not that I remember.
> Q: Did your mother ever indicate that she found out what your brother was doing with these cans?
> A: Specifically, no.
> Q: Did your mother say, "I think he was inhaling or

_____

4. It is unclear from the briefs and the deposition transcripts in the record to which of the two (or possibly other) occasions noted above Denise Johnson's testimony refers.

14

```
        ingesting this material?"
A: No sir, not that I remember.
Q: Wasn't there any conversation between you and
   your mother as to what your brother was doing
   with this material?
A: Yes sir, there was. She was not sure exactly what
   it was that he was doing with them. She just had
   a feeling that it just was not right, whatever it was
   he was doing with it.
Q: And did you indicate or did you suggest anything
   as to what he may be doing with this material?
A: Not that I remember.
```

App. at 304-05. As for the second incident, in 1994, Theresa Pavlik testified that neither she nor her mother specifically confronted Stephen about butane inhalation at that time:

```
Q: When you spoke to your mother in January of`94,
   did she indicate that this was only the second time
   she ever heard this laughing, the first time being
   about --
A: Yes, sir.
Q: -- a year and a couple months earlier?
A: Yes, sir.
   . . .
Q: Did she indicate that she spoke to her son again?
A: No, sir, not that I remember.
```

App. 307-08.

It is tempting to superimpose upon the record our own street-wise assumption that everyone knows the dangers (and warning signs) of butane abuse. But, as judges, we cannot do so. Since we must decide whether Stephen Pavlik was fully aware of the danger of bodily harm posed by butane inhalation, and since there may be degrees of apprehension of danger with respect to the seriousness of harm, viewing this evidence in the light most favorable to the plaintiffs, we cannot agree with defendants that it is beyond dispute that Mrs. Pavlik's warning was sufficient to break the causal chain. The jury may well find for defendants, but it is a question for the jury.

15

First of all, while it appears that Mrs. Pavlik gave some warning to Stephen, it is uncertain what the content of that warning was. Next, since the content of Mrs. Pavlik's warning is unclear, we cannot conclusively determine whether it was adequate to put Stephen on notice of the full extent of the risk of bodily injury, see Petree, supra, posed by butane inhalation. Indeed, there is also a genuine issue of material fact whether Mrs. Pavlik even knew what Stephen was doing with the butane cans -- and hence whether she was even capable of providing Stephen with sufficient knowledge of the danger at issue.

Theresa Pavlik's testimony that Mrs. Pavlik had said "the stuff's dangerous," is an insufficient basis for us to decide as a matter of law that Stephen was sufficiently warned of the danger at issue prior to his fatal inhalation, and therefore that the heeding presumption has been rebutted. This statement provides no more information than the warning on the Zeus can that a user should not "breathe spray." Indeed, it may actually provide less information, since Mrs. Pavlik's admonition does not relate what exactly about the butane is dangerous and/or what uses of the product would be dangerous. Below we consider whether a different result is commanded when we consider this evidence in conjunction with the warnings on the Clipper and Zeus cans.

3. The Clipper and Zeus Warnings

The defendants also argue that Stephen had the type of adequate prior knowledge of the danger at hand that we found in Conti and Overpeck, supra, because he had read the warnings on the Clipper and Zeus cans prior to his fatal inhalation. As we have noted throughout, to fall within the scope of these cases, the record must demonstrate that Stephen was fully aware of the risk of bodily injury posed by butane inhalation. See Petree, supra . We deal first with the Zeus warning. As a matter of basic logic, the defendants' argument that Stephen read the Zeus label and therefore a more detailed warning would not have altered his course of conduct is not really a claim about causation at all, but is a claim about the ultimate issue in this case -- the adequacy of the existing Zeus warning under S 402A.

16

The initial determination of whether a warning is adequate in Pennsylvania is a matter of law. See Nowak v. Faberge USA, Inc., 32 F.3d 755, 757 (3d Cir. 1994), aff'g, 812 F. Supp. 492 (M.D. Pa. 1992); Davis, supra. Since, as we develop below, we discern a genuine issue of material fact regarding the adequacy of the Clipper warning, and since we believe that Clipper more adequately warns of the danger of using butane as an inhalant than does the Zeus can, we cannot conclude that Stephen's awareness of the Zeus label provides a reason for finding no causation. To the contrary, based on the present record, we have serious doubts that the Zeus warning sufficiently warns users of the potentially fatal consequences of butane inhalation, and we are not convinced of its adequacy under S 402A. More specifically, the "DO NOT BREATHE SPRAY" warning appears to give the user no notice of the serious nature of the danger posed by inhalation, intentional or otherwise, and no other language on the Zeus can does so. Yet, we similarly cannot find that such a directive is inadequate as a matter of law, and so we must leave the question for the jury.5

The present case does not, however, present the typical manner in which the adequacy of a warning becomes an issue. Normally, it is only the warning on the defendant's product -- here, Zeus brand butane -- whose adequacy courts are called upon to consider. The twist in this case is that the defendants and the district court have also made the adequacy of the Clipper warning a central issue by virtue of their proximate cause analysis. While the district court did not make a formal finding regarding the legal adequacy of the Clipper warning, it is apparent that its proximate cause analysis incorporated a belief that the Clipper warning would itself be adequate for S 402A purposes.

The Clipper warning states, in small capital letters on the back panel of the can, "Deliberately inhaling the contents
_____

5. We make clear, however, that this conclusion presupposes that the district court will first engage in the necessary Azzarello analysis. See Nowak, 32 F.3d at 757 (citing Azzarello v. Black Bros. Co., 391 A.2d 1020, 1025-27 (Pa. 1978).

17

may be harmful or even fatal."6 The district court presumed that Stephen Pavlik had read this warning because Stephen had "apparently inhaled" Clipper brand butane at some point. The basis for this inference is the fact that several Clipper cans were found in Stephen's bureau drawer. Since we must draw all inferences in favor of plaintiff, the non-moving party, it cannot be conclusively determined that Stephen inhaled Clipper butane from that fact alone. We agree, however, that it is reasonable to infer that Stephen had previously used the Clipper product in some manner or other.

As we have explained, it is normally presumed, pursuant to comment j, that when an individual uses a product he or she has read and heeded any warning labels attached to that product. However, there is an exception to this presumption, implicit in cases that hold that the victim's actual failure to read a warning label does not necessarily bar recovery "where the plaintiff is challenging the adequacy of the efforts of the manufacturer to communicate the dangers of the product to the buyer or user." Nowak, supra, 812 F. Supp. at 498; see also Baldino v. Castagna, 478 A.2d 807, 810 (Pa. 1984) (holding that drug manufacturer can breach duty of reasonable care by promoting product in such a way as to nullify printed warnings). That is, in cases where the alleged failure to warn is based on claims that a warning was given but was, for example, printed in small or unreadable type, the comment j presumption should not apply so as to compel a verdict for the defendant. This is because manufacturers cannot rely upon a presumption that the victim read a warning to shield themselves from liability for warnings that are inadequate precisely because they are not presented in a manner sufficient to attract the user's attention. See id.

In the present case, the inadequacies of the Clipper warning alleged by plaintiff are both substantive (i.e. the warning does not adequately describe the danger posed) and communicative (i.e. the warning does not command the attention of the user). To demonstrate the problems with

_____

6. The full text of the Clipper warning label is set forth in Part I, supra.

18

the Clipper warning, plaintiff primarily relies upon a report by E. Patrick McGuire, who is offered as a warnings expert. McGuire concludes that the Clipper warning is defective for the following reasons:

> 1) The inhalant danger is not listed on the front panel of the can, despite the fact that this is one of the "primary biological hazards associated with the foreseeable use of this product";
> 2) The warning fails to specifically warn of the dangers of concentrating the product -- i.e. the prohibitions about breathing the "contents" of the can are misleading such that some readers "will interpret this admonition to mean that a harmful dosage level is only reached if the entire can is inhaled";
> 3) The warning is set in conditional language, as opposed to stating that inhalation is "likely" to produce a fatal reaction.

App. at 329. McGuire's opinion raises genuine issues of fact about the adequacy of the Clipper warning. On a substantive level, we can reasonably infer from McGuire's second and third critiques set forth above that even if Stephen Pavlik had read the Clipper warning, he would not have adequately been fully warned of the danger of bodily harm posed by butane inhalation.

But even if the warning was substantively sound, that might not be enough, for the case law suggests that factors such as the placement and size of warning labels should also be considered. The opinion of the district court in Nowak, supra, surveyed the cases discussing these factors and found that:

> A manufacturer may be liable for failure to adequately warn where its warning is not prominent, and not calculated to attract the user's attention to the true nature of the danger due to its position, size, or coloring of its lettering. A warning may be found to be inadequate if its size or print is too small or inappropriately located on the product. The warning must be sufficient to catch the attention of persons who could be expected to use the product, to apprise

19

them of its dangers, and to advise them of the
measures to take to avoid these dangers.

Nowak, 812 F. Supp. at 497 (citations omitted). Although
our opinion on appeal in Nowak affirmed the verdict and
judgment of the district court, see Nowak, 32 F.3d at 759,
we did not expressly adopt this portion of the district
court's analysis. We do so here.

Following Nowak, we could also conclude from McGuire's
testimony that the Clipper warning was insufficient to
"catch the attention" of Stephen Pavlik. As McGuire noted
in his report, the Clipper warning is listed on the back
panel of the can. It is printed in relatively small type, of the
same font, color, and size as the instructions for use.
Indeed, we note that against the bright yellow label
background, the non-highlighted, black text of the warning,
in which the admonitions about avoiding extreme
temperatures, flammability, and keeping the product away
from children, run directly into the warning about
inhalation, may appear as a blur to the average user.

Thus, drawing all inferences from the record in plaintiff's
favor, we find that there is a genuine issue of material fact
whether the Clipper warning was sufficient to catch
Stephen Pavlik's attention and, by its terms, render an
additional warning on the Zeus can unnecessary. We reach
this conclusion regardless of whether we can apply
comment j and presume that Stephen read the warning (in
which case plaintiff 's expert testimony suggests that it is
substantively deficient), or whether the exception discussed
supra applies (in which case plaintiff has introduced
sufficient evidence of communicative inadequacies to raise
a question for the jury).

The defendants have pointed to no specific evidence in
the record that would render the Clipper warning sufficient
to defeat causation. Instead, defendants argue in their
briefs that Stephen Pavlik "deliberately disregarded" the
Clipper and Zeus warnings "in an attempt to misuse a
product for the sole purpose of getting high." While a jury
could certainly find the Clipper warning adequate and
reach this conclusion, the defendants do not cite to
evidence in the record demonstrating that a reasonable jury

20

could not find otherwise. Although we have thus far considered defendants' evidence of the three possible sources of Stephen's prior knowledge separately, we make clear that even considering the evidence of the Clipper warning in conjunction with the evidence of Mrs. Pavlik's alleged warnings and the (otherwise inadequate) Zeus warning, we are not persuaded that the defendants have met their burden of rebutting the comment j heeding presumption to the extent necessary to warrant summary judgment.

Our conclusions here are not contrary to the results or rationales of Conti, Overpeck, or Powell, cases relied upon by defendants. Both Overpeck and Conti were concerned with reminder warnings -- that is, those cases dealt with the question whether an additional warning by the manufacturer was needed when there was undisputed proof that the victim was at one time aware of the specific danger posed by the product. In Conti, the plaintiff was injured as she was entering the passenger side of her husband's car. The husband had failed to disengage the clutch when he started the car and, as a result, it lurched backwards, injuring the plaintiff as she tried to enter. Plaintiff alleged that the defendant's failure to place a warning about disengaging the clutch in the car's interior caused the injury, and a jury agreed.

After the district court denied Ford's post-trial motion for a judgment notwithstanding the verdict, this Court reversed. We determined that the issue of causation should have been decided in the defendant's favor as a matter of law. Mr. Conti had testified that he knew that in"driving a standard transmission you would have to depress the clutch," and testified that he had read the portion of the Owner's Manual to his car which stated "[o]n manual transmission vehicles, depress the clutch pedal and place the gear shift lever in the neutral position." Conti, 743 F.2d at 198. In light of these admissions of actual awareness of the danger, which would rebut the comment j heeding presumption, we discerned no evidence in the record to suggest that Mr. Conti would have paid any greater attention to what he was doing when starting the car if additional warnings had been contained in the operator's manual or on a sticker in the car. See id. at 198-99.

21

In Overpeck, the plaintiff was injured when a tire mounting tool manufactured by the defendant became disengaged from a tire and struck him in the eye. The 780<!>plaintiff brought suit alleging, inter alia, that the manufacturer had failed to adequately warn him of this danger. The jury found for the plaintiff, but the district court granted a motion for judgment notwithstanding the verdict concluding that the record was devoid of evidence directly establishing that any warning would have caused the plaintiff to act differently. We affirmed. See Overpeck, 823 F.2d at 757. This conclusion was based on the fact that while Overpeck had apparently received no formal advance warning, he specifically testified that he was aware that the mounting tool might fly off during operation. See id. at 755–56. In fact, he further indicated that he knew how to prevent the precise injury caused in that case. See id. Thus, we concluded that any additional warning would have provided plaintiff with no new information, and"thus would not logically have affected his behavior." Id. at 755.

In this case, we are not presented with similarly uncontroverted evidence demonstrating that Stephen Pavlik was aware at the time of his accident that inhaling butane could cause sudden death or serious bodily harm. Unlike Conti and Overpeck, we have no direct testimony demonstrating the victim's knowledge. We only have evidence before us that Mrs. Pavlik may have warned Stephen (the content and adequacy of which is unclear and hence in dispute), and, at most, the possibility, see S 402A cmt. j, that he read a Clipper warning whose adequacy is likewise at issue. Unlike Overpeck and Conti, therefore, we are not dealing solely with the narrow question whether there is independent evidence demonstrating that a reminder warning would have made a difference. In this case, there are genuine issues of fact concerning whether Stephen Pavlik was adequately warned in the first instance (i.e. was inhalation known to pose a danger of bodily harm), and thus whether the heeding presumption has been rebutted.

Moreover, and more importantly, we held in Petree that the user's mere awareness of a hazard does not establish that the user was fully aware of the risk of serious bodily

22

injury, such that the user should be legally accountable. See Petree, 831 F.2d at 1196. In that case, the plaintiff was injured when he was struck in the face by a steel bar which was ejected from a hydraulic press being operated by his fellow employee. The plaintiff alleged that the hydraulic press was defective for lack of a warning regarding the possibility that it could forcefully eject pieces of scrap metal. See id. at 1192. Although there was evidence in the record from the operator of the press and others indicating some prior awareness of the complained of danger, we found that the evidence did not demonstrate an awareness of "the full extent that an adequate warning might have provided," and thus held that the failure to warn claim should have gone to the jury. See id. at 1196-97. Similarly, in the present case the defendants' evidence does not demonstrate that a reasonable jury could only conclude that Stephen Pavlik was fully aware of the extreme nature of the consequences he faced when he chose to inhale butane.

The injury to the victims in Conti and Overpeck did not result in death, the result that befell Stephen Pavlik here. While our decision in those cases turned on deposition testimony by the victims, defendants here obviously did not have the opportunity to depose Stephen Pavlik and determine what his exact level of knowledge was at the time the injury occurred. However this is a distinction without a difference, for it is not the mere lack of direct testimony by the victim (which would be missing in any products case resulting in death) that distinguishes this case from Conti and Overpeck. We simply find that Pavlik has met his burden of demonstrating that there is a disputed question of fact concerning what Stephen knew and thus whether additional information ex ante would have altered his course of conduct. We also note that while Pavlik has met his burden on summary judgment, he faces the more difficult burden of demonstrating causation to the jury at trial, and the evidence before us now might fall short of that mark.

Powell does not command a different result. In that case, the plaintiff, a hospital nurse, was injured when a hand-tied restraining vest manufactured by the defendant and

23

designed to secure geriatric patients to a chair or bed was removed by a patient, causing the patient to fall. The plaintiff attempted to grab onto the patient as he fell, resulting in an injury to the plaintiff's back. She brought suit against the manufacturer for failure to adequately warn of the danger of the patient's ability to remove the vest by himself.

Evidence in the record indicated that the hospital had a policy of using more secure restraining devices in addition to hand-tied vests only on patients who posed a threat of violence or escape. See Powell, 766 F.2d at 134. There was also testimony that the patient involved in the accident was not, at the time of the accident, a known threat. See id. Thus, even if the additional warning desired by the plaintiff in Powell had been affixed, there was no reason to believe that the plaintiff would have acted any differently since she produced no evidence that she would have diverged from hospital policy with this particular patient (i.e. used additional restraints on a non-threatening person) had she been warned that patients using the defendant's vest could untie themselves. See id. In short, although unlike Conti and Overpeck in that Powell does not pose a scenario in which the plaintiff was specifically aware of the complained-of danger, the record made clear that even had she known that patients could untie the defendant's vests themselves, she would not have acted differently.

This case is far different from Powell because, as we have explained, the record is not unequivocal as to Stephen Pavlik's knowledge of the dangers posed by butane inhalation and his likely course of conduct. Unlike the defendant in Powell, which introduced the evidence of the hospital policy to demonstrate that (even with the benefit of a heeding presumption) plaintiff had not met her burden of persuasion on the causation issue, here the defendants have not directed us to similar evidence.7  Accordingly, Powell does not control. In sum, although a jury may not

_____

7. Moreover, Pavlik has introduced evidence that indicates that warnings are heeded in the non-consumable products context presented by this case. Thomas J. Wallace, Ph.D., for example, has stated very plainly that "[e]ffective labels do warn and do deter." App. at 352.

24

find enough evidence here to find for Pavlik at trial, he has introduced at least enough to create a genuine issue of material fact precluding summary judgment.

III. Intentional Infliction of Emotional Distress

The district court also granted defendants' motion for summary judgment on plaintiff's claim of intentional infliction of emotional distress. The court found no evidence in the record to support plaintiff's contention that defendants' conduct was "extreme and outrageous" or "beyond all bounds of decency." Op. at 11. We agree.

As we have explained in prior opinions, the Pennsylvania Supreme Court has yet to decide whether a cause of action for intentional infliction of emotional distress is cognizable under Pennsylvania law, see Kazatsky v. King David Memorial Park, Inc., 527 A.2d 988 (Pa. 1987) (leaving "to another day" whether this cause of action is viable in the Commonwealth), generating confusion among the courts that have been presented with this type of tort claim. Compare, e.g., Andrews v. City of Philadelphia, 895 F.2d 1469, 1486–87 (3d Cir. 1990), with Ford v. Isdaner, 542 A.2d 137, 139 (Pa. Super. Ct. 1988), and Small v. Juniata College, 682 A.2d 350, 355 (Pa. Super. Ct. 1996). We have consistently predicted, however, that the Pennsylvania Supreme Court will ultimately recognize this tort. See Trans Penn Wax Corp. v. McCandless, 50 F.3d 217, 232 (3d Cir. 1995); Silver v. Mendel, 894 F.2d 598, 606 (3d Cir. 1990); see also Corbett v. Morgenstern, 934 F. Supp. 680, 683–84 (E.D. Pa. 1996) (noting confusion caused by Kazatsky and our subsequent prediction).

We have also predicted that Pennsylvania would generally follow the basic formulation of the tort found in S 46 of the Restatement (Second) of Torts. See Trans Penn Wax, 50 F.3d at 232. Section S 46 provides that:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it for such bodily harm.

25

See also Small, 682 A.2d at 355 (citing S 46). We have further held that S 46 liability will only be found where "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, as to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts S 46 cmt. d (cited in Kazatsky, 527 A.2d at 991; Trans Penn Wax, 50 F.3d at 232). This is a heavy burden for a plaintiff to meet, as recovery under S 46 has been "highly circumscribed". Kazatsky, 527 A.2d at 991.

The thrust of plaintiff's S 46 claim is that Keen was aware that butane inhalation was widespread and deadly, but did nothing about it, while Lane was similarly put on notice and failed to make inquiries into this danger. We agree with the district court that the plaintiff has not adduced sufficient evidence (the sum and substance of which we have outlined in the margin) to justify afinding that either defendant's acts in this regard amount to outrageous conduct that is intolerable in a civilized society.8

_____

8. With regard to Keen, plaintiff alleges that the company "refused" to participate in programs or take independent actions designed to alert the public to the dangers of inhalant abuse despite its knowledge of those dangers. To illustrate this, plaintiff points to Keen's "refusal" to contribute to a campaign of public interest television advertisements in the United Kingdom and its purported failure to comply with proposals made by Re-Solve, a manufacturer's association. The evidence in the record, however, indicates only (1) that Keen was "not asked" to contribute to the advertising campaign; and (2) that Keen offered revisions to Re-Solve's proposals and decided to take no action when Re-Solve did not respond. See App. at 385, 391-92. Plaintiff also argues that, in response to a set of five recommendations by a British government advisory council designed to curb butane inhalation abuse, Keen only chose to adopt the one measure that it believed could also prove profitable. See App. at 394, 396. While this may be true, and while perhaps the act of following only one of many recommendations proposed by an advisory group may appear suspect, we cannot conclude that this act in this instance constitutes outrageous conduct.

The evidence against Lane, plaintiff contends, demonstrates a failure to "learn about or prevent death from butane inhalation" after Lane was sued in Massachusetts in 1989. However, it is unclear from the record what the precise allegations in the Massachusetts case were, and we

26

See Small, 682 A.2d at 355 (court must initially decide whether defendant's conduct was so extreme and outrageous that recovery may be justified). Accordingly, the district court's grant of summary judgment for defendants will be affirmed on plaintiff's intentional infliction of emotional distress claim. However, as explained above, the order granting summary judgment on the failure to warn claim will be reversed, and the case remanded to the district court for further proceedings.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

_____

could only speculate that the case arose out of similar facts to those alleged here. Moreover, the record only supports the conclusion that Lane viewed the Massachusetts case as an "isolated incident" that did not warrant further investigation. App. at 400. Furthermore, there is nothing in the record to suggest that Lane was aware that butane was being used as an inhalant prior to that lawsuit, and nothing that suggests that Lane learned from that case that their present warnings were inadequate. Plaintiff also offers other evidence of Lane's alleged failure to inquire into the harmful effects of butane inhalation, including its alleged failure to question why Keen wanted to add the "DO NOT BREATHE SPRAY" language to the Zeus label in 1987–88, and its alleged failure to reevaluate the Zeus warning when other label changes were proposed in 1992. Once again, we find nothing in the record that demonstrates that Lane's knowledge of the butane abuse problem was such that these actions are indicative of outrageous conduct.

27