**Patrice BELOFSKY, Plaintiff,**

v.

**GENERAL ELECTRIC COMPANY, Defendant.**

**D.C. Civ. No. 1994–041.**

District Court,
Virgin Islands,
Division of St. Croix.

April 2, 1998.

Scott Burton, St. Croix, USVI, for plaintiff.

R. Eric Moore, St. Croix, USVI, for defendant.

## MEMORANDUM

MOORE, Chief Judge.

This matter is before the Court upon the motion of plaintiff Patrice Belofsky ["Belofsky"] for reconsideration of the Court's Order excluding the testimony of plaintiff's expert witness, Ervin Leshner, R.P.E. ["Leshner"], and upon the motion of defendant General Electric Company ["GE"] for summary judgment. For the reasons expressed herein, the Court will deny Belofsky's motion for reconsideration and grant GE's motion for summary judgment.

## I. FACTS

Belofsky filed a complaint on April 6, 1994 alleging that while visiting her parents on St. Croix in July of 1992, she was injured by a General Electric Monogram Series side-by-side refrigerator when the refrigerator door allegedly closed by itself with enough force to crush her left thumb. In her complaint, Belofsky initially claimed that GE was liable for the design and manufacture of a defective product, namely a refrigerator that created a danger for left-handed persons. Plaintiff has since amended her complaint on two occasions. In her last amended complaint, Belofsky alleged that GE failed to warn her of the dangerous "pinch point" created by the small distance between the two doors and also failed to warn of the danger caused by loading heavy objects in the refrigerator door which would cause the door to close with greater force. Belofsky also claimed that the door-closing mechanisms suffered from a defective design. In the parties' Joint Final Pretrial Order, Belofsky asserted that the general legal issue presented in this matter included only "liability for negligent product design." (*See* Joint Pretrial Order ¶ 8 (June 20, 1997).)

On September 5, 1997, the Court entered an Order granting GE's motion in limine to exclude the testimony of the plaintiff's expert, Erwin Leshner. The Order noted that a written memorandum would follow. The Court's Memorandum Opinion fully explaining the reasoning for this exclusion was issued October 20, 1997, and distributed to all parties. GE subsequently moved for summary judgment, which plaintiff opposed. The Court heard oral argument on the motion for summary judgment on February 24, 1998.

## II. MOTION FOR RECONSIDERATION

 Belofsky has requested that the Court reconsider its decision to strike the testimony of her expert witness, Mr. Leshner. Although the Court's opinion was signed and distributed on October 20, 1997, Belofsky did not move for reconsideration until February 6, 1998. As justification for why the Court should consider plaintiff's untimely motion, plaintiff's counsel asserts that his client should not suffer because of the "District Court['s failure] to provide a copy of the Memorandum Opinion to the Plaintiff's counsel." (Plaintiff's Motion for Reconsideration ["Motion"] at 2.) Belofsky submitted two affidavits in support of the motion for reconsideration, including that of plaintiff's counsel's secretary who stated that she recalled "several occasions" on which plaintiff's counsel expressed "surprise that the final Order had not been issued." (Motion, Affidavit of Rosmund Caesar at 1.) Counsel for GE responded and asserted that his office also did not receive a copy of the Court's Memorandum and was not aware of the grounds for the decision until about the same time as plaintiff's counsel.

The Court's records reflect that the Memorandum of October 20, 1997 was duly distributed to both counsel, the Clerk's Office having placed a copy of the Memorandum in each attorney's distribution box at the District Court in St. Croix, as is customary. Even if an error were made in the distribution, however, this would not excuse plaintiff's lack of action. It was counsel's responsibility to keep current with the status and progress of his case, which is the basis for the Court's local rule imposing the duty on counsel to check their distribution boxes in the Clerk's Office frequently "to ensure that they receive timely notice of such orders and other notices." D.V.I. LRCi 5.3.

If plaintiff's counsel was surprised and concerned that he had not received the Memorandum, he had many ways to investigate the matter. A simple telephone call to the Clerk's Office or a check of the docket of this matter on the public access computer located in the Clerk's Office instantly would have informed counsel that the Memorandum had been issued and docketed in October, 1997.

It was inexcusable neglect on the part of plaintiff's attorney to fail to keep up with the progress of his case. *See Dominic v. Hess Oil Virgin Islands Corp.*, 841 F.2d 513, 517 (3d Cir.1988)(to demonstrate excusable neglect, party must show "good faith" and "some reasonable basis for noncompliance"); *Green v. Humphrey Elevator & Truck Co.*, 816 F.2d 877, 880 (3d Cir.1987)(excusable neglect protections extend only to those "diligent plaintiffs who, though making every effort to comply with the dictates of the rule, nonetheless" fail to timely file).

 Even if the Court were to consider Belofsky's motion on the merits, she raises nothing new to consider or which would warrant vacating the Court's ruling excluding Mr. Leshner's testimony. Plaintiff instead merely maintains that the Court incorrectly applied *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), by going beyond the plaintiff's vision of the function of a "gatekeeper" under the *Daubert* decision. Belofsky reargues that Leshner's "methodology" was reliable and that the Court excluded his testimony only because it differed from what the Court thought "an expert's testimony should be." (Motion at 5.)

 The very purpose of the Court's gatekeeping function is to determine if a proposed expert's testimony is admissible based on accepted standards of what "an expert's testimony should be." The district court is generally required to act as "gatekeeper" to assure that the technique, procedure, and methodology upon which an expert opinion is founded is reliable, i.e., that the expert's conclusion is based on good grounds. *See, e.g., Daubert*, 509 U.S. at 590. For the reasons set forth in its Memorandum of October 20, 1997, this Court found that Mr. Leshner's methods and procedures were totally unreliable and Belofsky has not suggested any new facts or factors that would alter this conclusion.

Notably absent from Belofsky's motion is any mention of a recent United States Supreme Court decision which further supports this Court's exclusion of plaintiff's so-called expert. *See General Elec. Co. v. Joiner*, ——

U.S. ——, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). The defendant in *Joiner* had argued that the district court had excluded its experts' testimony simply because the trial judge disagreed with the experts' conclusions and not because the experts' methodology was faulty and unreliable. In rejecting these arguments and affirming the district court's decision to exclude the expert testimony, the Supreme Court observed that "conclusions and methodology are not entirely distinct from one another.... A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.* at ——, 118 S.Ct. at 519.

Applying *Joiner* to this case, the analytical gap amounts to an "analytical chasm" between the data that a heavily loaded refrigerator door when forcibly closed could crush a carrot and Leshner's opinion that the refrigerator was defectively designed and that the defect could have caused Belofsky to crush her thumb in the door. The proffered testimony also included data that the refrigerator door would not close by itself on the day that Mr. Leshner examined the door in March of 1997. The analytical gap between this data that a door that would not even close by itself but had to be manually closed in 1997 and Leshner's opinion that it would have slammed shut with enough force to crush a thumb five years earlier in 1992 also constitutes too great of a chasm to be reliable. The Court found Mr. Leshner's testimony to be both unreliable and completely irrelevant to the trier of fact. Accordingly, plaintiff's motion for reconsideration will be denied.

## III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also Chelcher v. Spider Staging Corp.,* 892 F.Supp. 710, 713 (D.Vi.1995). The moving party may seek a summary judgment with or without supporting affidavits. *See*

FED. R. CIV. PROC. 56(b); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party opposing summary judgment, however, "may not rest upon the mere allegations or denials of the [its] pleading"; its response, "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *See* FED. R. CIV. PROC. 56(e); *see also Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). Neither the moving party or opposing party may rely on evidence that would be inadmissible at trial to either support or oppose a motion for summary judgment. *Celotex,* 477 U.S. at 324; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159 n. 19, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

GE has moved for summary judgment, arguing that Belofsky has failed to state a claim upon which relief may be granted on the claim of failure to warn; failed to produce evidence to establish that the refrigerator was defective thus barring plaintiff's claims in both strict liability and negligence; and failed to overcome GE's evidence that her claims are barred because of her assumption of the risk in continuing to use the refrigerator after knowing that the door closed automatically and with some degree of force. In support of its motion, GE relies primarily on Belofsky's sworn deposition testimony.

Belofsky's opposition to the motion for summary judgment relies solely on the arguments of her counsel, the excluded testimony of her expert, and statements of Mr. David Cherry, GE's expert witness. Belofsky has failed to present any evidence demonstrating that, even if the refrigerator door was defective, such defect was the proximate cause of her injury. Belofsky has further failed to demonstrate that she was not adequately warned.

■ As already stated, Belofsky cannot rely solely on her pleadings or on the arguments of counsel. Rather, she must come forth with a showing of specific evidence to

demonstrate that there is a genuine dispute of material facts. She has not done so. Moreover, even the naked argument of Belofsky's counsel does not make such a showing.

Belofsky improperly relied on Mr. Leshner's testimony which this Court, by Order entered on September 5, 1997, ruled was not admissible. Counsel for Belofsky does not suggest that he did not receive this Order striking his expert's testimony. Counsel therefore knew that Belofsky was obliged to respond to GE's November 1997 motion for summary judgment on the basis that Leshner would not be allowed to testify. Counsel surely could not have assumed that plaintiff's motion to reconsider would be granted and on that assumption included the Leshner testimony in the opposition to summary judgment. On the contrary, plaintiff was obligated by the law of the case to submit her opposition with Leshner's testimony excluded.

Without any quotations or page references to his testimony, counsel has represented that Mr. Cherry supported plaintiff's claim that the Monogram refrigerator was defectively designed. A cursory review of Mr. Cherry's deposition testimony quickly reveals the source of defense counsel's reluctance to provide such references. Plainly put, counsel has misrepresented what Cherry said.

Mr. Cherry testified that the Monogram refrigerator was designed as "a built-in product where you can put decorator panels on the front door to match your kitchen" decor. (Deposition Tr. of David N. Cherry ["Cherry Tr."] at 14.) Although the Monogram model involved in this case could be built into the wall, its door hinge and cam-riser closing mechanism caused it to stick out approximately one and one-half inches so the door could open and close. Cherry devised "a new hinge system, an outboard hinge system" which allows today's Monogram refrigerator to be installed flush with its enclosure.

(*Id.* at 21.) For the refrigerator to be totally flush, "the hinge point needs to be in front in order to clear the adjacent cabinetry and adjacent appliances." (*Id.* at 23.) The gravity assisted style of cam-riser door closing mechanism on the Monogram in this case could not be used on this new outboard or elbow hinge. (*Id.*) Therefore, Mr. Cherry designed a door closure mechanism in which a spring, rather than gravity, pulls the door closed through the last thirty degrees. (*Id.* at 22–23, 26–28.)

The GE expert categorically rejected the idea that one of the reasons he designed the spring closure system was out of concern that increasingly heavy loads were causing doors with the cam-riser closure to close too forcefully. (*Id.* at 24.) There is thus no basis for counsel's argument that this redesign was to correct a "defect" in the door mechanism on the GE Monogram refrigerator involved in this case. In fact, Mr. Cherry testified that the very same type of cam-riser closing mechanism is still used on refrigerators presently in production. (*Id.* at 27.)

■ Plaintiff also has failed to identify any evidence that indicates that GE failed to provide adequate warnings. GE shows that Belofsky was fully aware of the risk of any potential bodily harm when using the refrigerator, relying on her sworn deposition testimony.[1] Belofsky admitted that she knew the door shut with some force and that despite this awareness; she nevertheless "felt it was reasonable for [her] to continue to use [the refrigerator]." (Deposition Tr. of Patrice Belofsky ["Belofsky Tr."] at 21, 24).

The facts of this case are readily distinguishable from the recent decision of *Pavlik v. Lane Ltd./Tobacco Exporters International*, 135 F.3d 876 (3d Cir.1998). The dispute in *Pavlik* centered on whether the manufacturer of a butane lighter provided adequate warnings that it was dangerous to inhale the

---

1. GE also argues that all of Belofsky's claims are barred because she assumed the risk through her repeated use of the refrigerator in the years before the alleged accident. *Id.* Belofsky has admitted knowing that the refrigerator door closed automatically and with some degree of force. By continuing to use the refrigerator in this condition, GE asserts that Belofsky has waived any

claim she may have had against its manufacturer because she assumed the risk of using the refrigerator. *See* RESTATEMENT (SECOND) OF TORTS § 402A cmt. n ("If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery.")

butane. The injured party had died of cardiac dysrhythmia caused by the inhalation of butane. A key witness, the victim's mother, also had died before trial. Without the testimony of the victim and his mother, the Court of Appeals could not find as a matter of law that the victim was "fully aware of risk of bodily injury" that could result if he inhaled the butane. *Id.* at *13. This case does not present such a dilemma. Here, the plaintiff has testified that she knew the door shut with some force. This case is also distinguished by the nature of the danger the two products might pose to consumers. The dangers attendant to placing one's hand between two solid doors as one closes on the other with *any* degree of force is patently obvious, as Belofsky acknowledged in her deposition. Whereas in *Pavlik*, the potentially deadly danger of inhaling butane may be beyond the limits of the average consumer's knowledge.

Once the defendant demonstrates that the plaintiff was fully aware of the risk of bodily injury posed by the product before plaintiff's injury, the plaintiff must come forward with evidence to prove that an adequate warning would have changed plaintiff's behavior. *Pavlik*, 135 F.3d 876, 883–884. Belofsky has acknowledged that she knew her thumb would not fit in the space between the refrigerator doors if both were closed. (Belofsky Tr. at 39.) Even more significantly, Belofsky has admitted that she needed no warning to keep her fingers out of the closure area of the refrigerator doors because she was both old enough and intelligent enough to know not to do so. (*Id.* at 19–21.) She also testified that she had not read the manual that was provided by GE for the Monogram refrigerator. (*Id.* at 23.)

Nothing presented by the plaintiff or any of the evidence indicates that Belofsky would have altered her behavior if GE had provided additional warnings. Any additional warnings in the manual would have been completely ineffective as Belofsky never read the manual. Plaintiff's counsel speculated that some sort of "reminder warning" in the form of a sticker on the refrigerator door might have caused Belofsky to pay greater attention to her actions and avoid placing her hand in a place she knew was somewhat

dangerous. Such mere speculation that a warning sticker on the refrigerator would have altered Belofsky's behavior and avoided the injury is hardly the kind of "evidence" that could overcome GE's evidence that she was fully aware of the risk of bodily injury posed by the Monogram refrigerator. *See Conti v. Ford Motor Co.*, 743 F.2d 195, 198–99 (3d Cir.1984)(Where driver was fully aware of dangers of operating standard transmission car and knew how to operate the car, manufacturer could not be held liable for failure to place a warning sticker on the dashboard of car.). Belofsky has not presented any evidence, let alone sufficient evidence, that such a "reminder warning" would have made a difference. *Id.* Belofsky has failed to point to any evidence to suggest that she "would have paid any greater attention to what [she] was doing when [opening the refrigerator doors] if additional warnings had been contained in the operator's manual or on a sticker in the [refrigerator]." *Pavlik*, 135 F.3d 876, 887–88.

In summation, Belofsky has not identified any evidence or disputed facts which support her claim that the refrigerator was defectively designed, that a defective design or failure to warn was the proximate cause of her injuries, or that any warning would have prevented her injury. Plaintiff simply has failed to put forth any significant probative evidence to support her complaint. Accordingly, defendant's motion for summary judgment will be granted.