**NICKEY DAVIS, Plaintiff**

**v.**

**HOVENSA, LLC AND UHP PROJECTS, INC., Defendants**

SX-02-CV-333

Superior Court of the Virgin Islands

Division of St. Croix

October 28, 2015

475

477

LEE J. ROHN, ESQ., Lee J. Rohn and Associates, LLC, Christiansted, USVI, *For Nickey Davis, Plaintiff.*

KEVIN L. KELLER, ESQ., Willcox & Savage, P.C., Norfolk, VA, *For UHP Projects, Inc., Defendant.*

SUNSHINE S. BENOIT, ESQ., Barnes & Benoit, LLP, Christiansted, USVI, *For Hovensa, LLC, Defendant.*

WILLOCKS, *Administrative Judge*

## MEMORANDUM OPINION

(October 28, 2015)

**THIS MATTER** comes before the Court on Defendant UHP Projects, Inc.'s (hereinafter, "UHP") Motion for Summary Judgment (hereinafter, "Summ. J. Mot.") and Statement of Undisputed Facts (hereinafter, "Defendant UHP's SOF"), filed on October 13, 2011. On December 28, 2011, Plaintiff filed an Opposition (hereinafter, "Summ. J. Opp'n") and a Response to Defendant UHP's Statement of Undisputed Facts/Counter-Statement of Material Facts (hereinafter, "Plaintiff's SOF"). On February 9, 2012, Defendant UHP filed a Reply and a Reply to Plaintiff's

478

Counter-Statement of Material Facts. Subsequently, in June 2013, Plaintiff filed a Supplemental Opposition and a Supplemental Counter-Statement of Material Facts.[1] Defendant UHP filed a Reply to Plaintiff's Supplemental Opposition and a Response to Plaintiff's Supplemental Counter-Statement of Material Facts.[2] Additionally, in August 2015, the Court entered an Order *sua sponte* and granted the parties leave to file a supplemental brief if they want to, in light of *Government of the Virgin Islands v. Connor*, 60 V.I. 597 (V.I. 2014) and *Banks v. International Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011). In response, Plaintiff filed a supplemental brief on September 1, 2015. Defendant UHP did not file a supplemental brief.

## BACKGROUND

On January 22, 2001, Plaintiff was an employee of Jacobs Industrial Maintenance Company, L.L.C. (hereinafter, "Jacobs"), working at Defendant Hovensa's refinery in St. Croix, U.S.V.I. (Compl. ¶ 5; Answer ¶ 13; Plaintiff's SOF ¶ 1.) Defendant Hovensa and Jacobs had previously entered into a general service agreement, dated September 6, 1999, whereby Jacobs agreed to provide the services described within the agreement to Defendant Hovensa (hereinafter, "General Service Agreement"). (General Service Agreement.) The General Service Agreement identified the duties and responsibilities of each party. (*Id.*) More specifically, the General Service Agreement provided that, *inter alia*, Jacobs was required to: (1) provide project training, safety programs, and quality assurance required to control the assigned services and employees; (2) administer a safety test designed to ensure that employees have a basic knowledge to perform their work safely; and (3) administer a training program for employees to improve their job related skills and knowledge. (*Id.*)

---

[1] Plaintiff had filed a Motion for Leave to Supplement in March 2013, after Defendant UHP produced new discovery responses. However, in June 2013, while Plaintiff's Motion for Leave was still pending, Plaintiff went ahead and filed the supplemental documents without leave of the Court.

[2] In September 2015, the Court granted Plaintiff's Motion for Leave to Supplement, but in lieu of granting Plaintiff leave at that time to supplement, Plaintiff's supplemental filings from June 2013 were accepted. In the same Order, the Court deemed Defendant UHP's Reply to Plaintiff's Supplemental Opposition and Response to Plaintiff's Supplemental Counter-Statement of Material Facts as accepted.

As part of Plaintiff's duty at Defendant Hovensa's refinery, he was required to operate an ultra high pressure water blasting equipment (hereinafter, "ultra high pressure water blaster"). (Summ. J. Opp'n at 2.) The ultra high pressure water blaster was owned by Defendant UHP and leased to Defendant Hovensa pursuant to a term service agreement (hereinafter, "Term Service Agreement"), a lease agreement (hereinafter, "Lease Agreement")[3] and an addendum to the Term Service Agreement (hereinafter, "Addendum").[4] (Compl. ¶ 7; Term Service Agreement; Lease Agreement; Addendum.) The Term Service Agreement, the Lease Agreement and the Addendum identified the duties and responsibilities of each party. (Term Service Agreement; Lease Agreement; Addendum.) Schedule A and Schedule C to the Term Service Agreement required, *inter alia*, Defendant UHP to provide a safety orientation and monitor personnel training and productivity. (Term Service Agreement.) Exhibit 12 to Schedule C to the Term Service Agreement further required that, *inter alia*: (1) Defendant UHP to ensure that all employees receive Defendant Hovensa's safety orientation before being permitted to work Defendant Hovensa's refinery; (2) Defendant UHP to ensure that his employees hold daily pre-job safety discussion, weekly tool box meetings and monthly safety meetings; (3) Defendant UHP to train all fire watches, safety watch and/or safety standby personnel; and (4) Defendant UHP to maintain records concerning safety and health training for employees working on their project. (*Id.*) However, under the Lease Agreement and the Addendum, Defendant Hovensa was required to provide a safety orientation, and that it was exclusively Defendant Hovensa's responsibility to ensure that the employees are adequately trained. (Addendum; Lease Agreement.)

Plaintiff claimed that prior to the alleged incident, he had only been hydroblasting for approximately a week to a week-and-a-half. (Davis Dep. 47:19-25, 48:1-5.) Plaintiff further claimed that he never received any training before he started hydroblasting. (Davis Dep. 46:23-25.)

---

[3] Although Plaintiff attached the Lease Agreement and the Addendum to Plaintiff's SOF, Plaintiff did not include the Term Service Agreement to which the Addendum was a part of. For the completeness of the record, the Court wanted to review the Addendum in conjunction with the Term Service Agreement, and was able to find a copy of the Term Service Agreement from the file.

[4] The Term Service Agreement was dated November 21, 2000. The Lease Agreement was dated November 22, 2000. The Addendum was dated December 4, 2000.

On the day of the alleged incident, Plaintiff was instructed to use the ultra high pressure water blaster to hydroblast the paint from in his assigned area. (Summ. J. Opp'n at 2.) The ultra high pressure water blaster uses up to 40,000 pounds per square inch (PSI) of water and was connected to two guns, the "East Gun" and the "West Gun." (Plaintiff's SOF ¶ 24, ¶ 25.) Plaintiff was using the East Gun and his co-worker was using the West Gun. (Plaintiff's SOF ¶ 25.) Plaintiff claimed that, all of a sudden, the East Gun got a "kick," so Plaintiff grabbed onto the railing and in the process, loosened the trigger in his right hand and dropped the East Gun.[5] (Davis Dep. 60:3-6, 20-25.) The point of the East Gun blasted Plaintiff's foot and Plaintiff sustained injuries as a result. (Compl. ¶ 14, ¶ 15; Davis Dep. 60:6-7.)

■■■■ On May 20, 2002, Plaintiff filed a lawsuit against Defendant Hovensa and Defendant UHP. (Compl.) Plaintiff's complaint appeared to allege two causes of action against Defendant UHP and Defendant Hovensa — a product defect claim and a negligence claim for failure to provide proper training.[6] (Compl.) Plaintiff seeks damages along with costs and fees. (Compl. ¶ 15.)

---

[5] However, Plaintiff was still holding onto the East Gun with his left hand. (Davis Dep. 60:13-15.)

[6] Plaintiff did not plead any claims by name in his three-page Complaint containing 15 paragraphs. The Court has taken a liberal view of Plaintiff's Complaint to infer all plausible causes of action since "[p]leadings must be construed so as to do justice." FED. R. CIV. P. 8(e). Based on the following paragraphs, the Court construed Plaintiff's Complaint to allege a product defect claim:

10. The equipment was further in a defective condition that whenever one of the water guns on the system was depressurized it would cause a surge to the other gun and related equipment.
. . .
12. Ultra High Pressure stated that the equipment should not be surging as a result of the discontinuance of blasting by one of the guns.
. . .
15. As a direct and proximate result of the negligent acts and omissions of the Defendant as well as the defective condition of the equipment, Plaintiff suffered physical injuries
. . .

Based on the following paragraphs, the Court construed Plaintiff's Complaint to allege a negligent claim for failure to provide proper training:

8. Neither HOVENSA nor Ultra High Pressure made any attempt to ascertain if the Plaintiff had been trained or had the required knowledge to use the equipment
9. Plaintiff hd [sic] not received the proper training to use the equipment.
. . .

481

## STANDARD OF REVIEW[7]

A moving party will prevail on a motion for summary judgment where the record shows that there is no genuine issue of material fact and that

---

15. As a direct and proximate result of the negligent acts and omissions of the Defendant as well as the defective condition of the equipment, Plaintiff suffered physical injuries. . .

. . .

Defendant UHP's Motion for Summary Judgment addressed the product defect claim and, albeit briefly, the negligence claim for failure to provide proper training as well. Plaintiff's Opposition responded to Defendant UHP's arguments regarding the product defect claim and the negligence claim for failure to provide proper training, but also raised another negligence claim against Defendant UHP for failure to provide proper personal protective equipment. Defendant UHP's Reply again addressed the product defect claim and the negligence claim for failure to provide proper training, but also addressed Plaintiff's negligence claim for failure to provide proper personal protective equipment. In the supplemental filings, both Plaintiff and Defendant UHP's addressed the product defect claim, the negligence claim for failure to provide proper training, and the negligence claim for failure to provide proper personal protective equipment. Plaintiff argued the negligence claim for failure to provide proper personal protective equipment in his Opposition based on the assumption that the question was properly before the Court. Plaintiff's Complaint only alleged that he had "not received the proper training to use the equipment" and that the "equipment was further in a defective condition. . ." There was no mention in the Complaint that Defendant UHP and Defendant Hovensa had a duty to provide proper personal protective equipment to Plaintiff and that Plaintiff was not so provided. It appears that Defendant UHP was not even aware of this claim given that there was no discussion in its Motion for Summary Judgment. By adding the negligence claim for failure to provide proper personal protective equipment in his Opposition, Plaintiff essentially amended his Complaint. Plaintiff never moved to amend the Complaint to include a negligence claim for failure to provide proper protective equipment, and could not have amended the Complaint at this point of the litigation without leave from the Court. V.I. SUPER. CT. R. 8, and not FED. R. CIV. P. 15, govern amendments to complaints in this jurisdiction. *Santiago v. V.I. Housing Auth.*, 57 V.I. 256, at 275 n.11 (2012). Amendment under V.I. SUPER. CT. R. 8 is not as of right, but is instead, "vested in the sound discretion of the Superior Court." *Harvey v. Christopher*, 55 V.I. 565, 578 (2011). A claim must be contained in the complaint and cannot be raised for the first time on a summary judgment motion. *Caribbean Healthways, Inc. v. James*, 55 V.I. 691, 699 (2011) (affirmed the superior court's decision to reject the plaintiff's implied easement argument because it was not in the complaint and was raised for the first time in the motion for summary judgment). Accordingly, the Court will reject Plaintiff's negligence claim for failure to provide proper protective equipment.

[7] Both Defendant UHP and Plaintiff cited to FED. R. CIV. P. 56 as the applicable rule for Defendant UHP's Motion for Summary Judgment. However, in light of the Supreme Court of the Virgin Islands' ruling in *Vanterpool v. Gov't of the V.I.*, "the Federal Rules of Civil Procedure . . . should be invoked only when a thorough review of applicable Virgin Islands statutes, Superior Court rules, and precedents from this Court reveals the absence of any other [applicable] procedure." 63 V.I. at 576. Since there are precedents from the Supreme Court regarding motions for summary judgment, the Court will use the standard of review set forth in said precedents.

the movant is entitled to judgment as a matter of law. *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008). As to materiality, "only those facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 195 (citations omitted).

"[T]o survive summary judgment, the nonmoving party's evidence must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 50 V.I. at 195 (quotation omitted). The nonmoving party then has the burden of "set[ting] out specific facts showing a genuine issue for trial." *Id.* (citation omitted). The Court must view all inferences from the evidence in the light most favorable to the nonmoving party, and take the nonmoving party's conflicting allegations as true if properly supported. *Id.*; *see also Perez v. Ritz-Carlton (Virgin Islands), Inc.*, 59 V.I. 522, 527; *Joseph v. Hess Oil V. I. Corp.*, 54 V. I. 657, 668 (V.I. 2011).

## DISCUSSION

### I. DESIGN DEFECT CLAIM[8]

In moving for summary judgment with regard to Plaintiff's design defect claim, Defendant UHP asserted that expert testimony is required as to any alleged defect to the ultra high pressure water blaster since the equipment is complex and beyond the knowledge and experience of an average person. (Summ. J. Mot. at 3.) To support its proposition, Defendant UHP cited to *Belofsky v. General Electric Co.*, 1 F. Supp. 2d 504, 507-08 (D.V.I. 1998), *Jones v. Toyota Motor Sales, USA, Inc.* 282 F. Supp. 2d 274, 276-77 (E.D. Pa. 2003), *Oddi v. Ford Motor Co.*, 234 F.3d 136, 159 (3d Cir. 2000), *Cipriani v. Sun Pipe Line Co.*, 393 Pa. Super. 471, 574 A.2d 706, 710 (1990), *Lauder v. Teaneck Volunteer Ambulance Co.*, 368 N.J. Super. 320, 845 A.2d 1271, 1277 (2004), and *Scanlon v. General Motors Corp.*, 65 N.J. 582, 326 A.2d 673, 677 (1974). (*Id.*)

---

[8] In the Complaint, Plaintiff did not specify whether he was claiming a manufacturing defect, a design defect, or a defect based on inadequate instructions or warnings. *See supra*, n. 6. Nevertheless, both Plaintiff and Defendant UHP addressed Plaintiff's claim solely as a design defect claim in their respective Motion for Summary Judgment, Opposition, Reply, and supplemental filings. Most notably, Plaintiff's Opposition and Supplemental Opposition both had the heading: "The Ultra High Pressure Water Blaster Contained a Design Defect." Accordingly, the Court will treat Plaintiff's claim as a design defect claim.

Defendant UHP pointed out that Plaintiff's expert, Dr. Andrew Rentschler, "expressly withdrew his opinion that the equipment malfunctioned or that an equipment malfunction caused Plaintiff's alleged injuries." (*Id.*) Thus, Defendant UHP argued, since Plaintiff will not be able to offer any expert testimony as to the alleged defect to the ultra high pressure water blaster, or that said defect caused Plaintiff's alleged injuries, the Court should grant Defendant UHP's Motion for Summary Judgment with regard to Plaintiff's design defect claim. (*Id.* at 3-4.)

In his Opposition, Plaintiff claimed that Defendant UHP improperly argued that design defect claims must be supported by expert testimony. (Summ. J. Opp'n at 5.) Plaintiff noted that the *Belofsky* court did not rule that expert evidence was required to prevent a ruling on summary judgment, but that there must to be some evidence. (*Id.* at 5-6.) Moreover, Plaintiff claimed that Defendant UHP mischaracterized Dr. Rentschler's testimony. (*Id.* at 6.) For example, Plaintiff pointed out that Dr. Rentschler "consistently stated that he had no specific opinion if the ultra high power water blaster did surge, but that a surge is 'certainly a plausible explanation as to why, what happened or how it could have happened.' " (*Id.*) Plaintiff also pointed out that Dr. Rentschler testified that "even a small change in the force exerted by the ultra high pressure water blaster, such as a couple of pounds of force, 'would have been sufficient to actually cause [Davis] to have to step down off the step he was standing on.' " (*Id.*) Plaintiff further argued that evidence regarding a change in pressure or a surge in the ultra high pressure water blaster is not the type of "scientific, technical, or other specialized knowledge" requiring an expert opinion by FED. R. EVID. 702, and that his own testimony of the surge based on his experience and perception is sufficient. (*Id.* at 7-8.) Additionally, Plaintiff argued that under section 3 of the Third Restatement[9], circumstantial evidence may be used to show that a defect existed — the fact that surge occurred when the ultra high pressure water blaster was designed to provide consistent pressure. (*Id.* at 9-10.) Furthermore, Plaintiff argued that a spoliation reference should be applied in this case given that Defendant UHP had significant control over the subject ultra high pressure water blaster and that it was subsequently destroyed. (*Id.* at 7.) Accordingly, Plaintiff asserted that there are genuine

[9] American Law Institute's Restatement (Third) of Torts: Products Liability (1998) (hereinafter, "Third Restatement").

issues of material fact in dispute and the Court should deny Defendant UHP's Motion for Summary Judgment with regard to the design defect claim. (*Id.* at 10.)

In its Reply, Defendant UHP cited to *Anders v. Puerto Rican Cars, Inc., et al.*, 409 Fed. Appx. 539 (2011) to support his argument that expert testimony is necessary to prove the existence of a product defect. (Summ. J. Reply at 2.) Defendant UHP emphasized that the ultra high pressure water blaster involved and pressure surges are not simple matters within the common understanding of the jurors. (*Id.*) Defendant UHP argued that Plaintiff failed to provide any evidence that a pressure surge was even possible in the subject ultra high pressure water blaster. (*Id.* at 3.) Defendant UHP also argued that Plaintiff failed to provide evidence of an alternative design. (*Id.*) Defendant UHP further argued that Plaintiff failed to rule out other possible causes of the alleged incident, including third party's misuse of the equipment or Plaintiff's own misuse of the equipment. (*Id.*) Defendant UHP asserted that, in short, the only piece of evidence Plaintiff offered for the alleged design defect is his own testimony. (*Id.*) Additionally, Defendant UHP argued that a spoliation inference is improper here because there is no evidence of the required fraudulent intent in the destruction of evidence, and even if it is applicable, it is insufficient to survive summary judgment. (*Id.* at 6-7.)

In June 2013, Plaintiff filed a supplemental opposition, wherein he argued that the newly produced discovery revealed additional evidence in support of his design defect claim, namely, there was a leak in the East Gun approximately two weeks prior to the alleged incident, and a swivel repair was made to the West Gun approximately three days prior to the alleged incident.

In response to Plaintiff's supplemental opposition, Defendant UHP filed a supplemental reply, and reiterated the fact that Plaintiff is still unable to offer any expert testimony to support the alleged design defect in the ultra high pressure water blaster.

In September 2015, per the Court's Order, Plaintiff filed a supplemental in light of *Banks* and *Connor*. In his brief, Plaintiff advocated the Court to adopt sections 2 and 3 of the Third Restatement as the soundest rule of law for the Virgin Islands. Defendant UHP did not file a supplemental brief.

## A. Applicable Law for Design Defect Claims

█ In *Banks* and later cases, the Supreme Court of the Virgin Islands (hereinafter, "Supreme Court") instructed the superior courts to engage in a three-factor analysis when confronting an issue of common law that it has yet to address. *Banks*, 55 V.I. 967; *Connor*, 60 V.I. 597. While the Supreme Court adopted the general rule for products liability under the Third Restatement, the Supreme Court was silent with regard to the applicable law for products liability cases specifically based on design defect. *Id.* at 985. Because it appears that no binding precedent exists in this jurisdiction regarding the applicable law for design defect claims, the Court must undertake a *Banks* analysis. A *Banks* analysis consists of a balancing of the following three non-dispositive factors: (1) past practices of courts in this jurisdiction; (2) approaches taken by other jurisdictions; and most importantly, (3) which approach represents the soundest rule for the Virgin Islands. *King v. Appleton*, 61 V.I. 339, 349-50 (V.I. 2014).

### a. Past practices of courts in this jurisdiction

██ In *Banks*, the Supreme Court acknowledged that "section 402A [of the Second Restatement[10]] has received widespread acceptance in Virgin Islands courts." 55 V.I. at 981. Nonetheless, the Supreme Court recognized that abandoning *Pynes'* minority interpretation that lessors of chattel cannot be held strictly liable under Section 402A,[11] and adopting the majority position of holding lessors of chattel liable, is the sounder rule and more consistent with Virgin Islands jurisprudence and policy. *Id.* at 983. As such, the Supreme Court adopted sections 1[12] (hereinafter, "Section 1") and 20[13] of the Third Restatement. *Id.* at 986.

Prior to *Banks*, there are only a limited number of cases where the courts applied the products liability law as set forth in the Third

---

[10] American Law Institute's Restatement (Second) of Torts (1965) (hereinafter, "Second Restatement").

[11] Section 402A of the Second Restatement provides, in pertinent part: "One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property . . ."

[12] Section 1 of the Third Restatement states: "One engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect."

[13] Section 20 of the Third Restatement defines "One Who Sells or Otherwise Distributes."

Restatement. *See, e.g., Paul v. Electric Ave.*, 2001 U.S. Dist. LEXIS 14261 (D.V.I. App. Div. 2001) (unpublished) (applying the Third Restatement); *Hamlet v. Oliver Exterminating Inc.*, 44 V.I. 99 (Terr. Ct. 2001) (noting recent approval of the Third Restatement but finding summary judgment warranted under either version); *Hartzog v. United Corp.*, 59 V.I. 58 (2011) (applying the Third Restatement).

### b. Approaches taken by other jurisdictions

The Second Restatement contained a single provision dealing with products liability: Section 402A. RESTATEMENT (SECOND) OF TORTS (1965). Majority of the jurisdictions adopted Section 402A as the test for a defective product. Richard W. Right, ARTICLE: THE PRINCIPLES OF PRODUCT LIABILITY, 26 Rev. Litig. 1067, 1068 (2007). Section 402A provides a unitary test of liability for all three types of defects: manufacturing, design, and defects based on inadequate instruction or warnings, and the standard is based on a "product in a defective condition unreasonably dangerous to the user or consumer." RESTATEMENT (SECOND) OF TORTS § 402A(1). In other words, under Section 402A, liability was hinged on the consumer's expectations of product safety and performance. RESTATEMENT (SECOND) OF TORTS § 402A cmts. g & i.[14] Subsequently, due to problems applying Section 402A to design defects cases, many states supplemented or replaced Section 402A's consumer expectation approach with some version of the risk-utility test embraced by section 2(b) of the Third Restatement.[15] Wright, 26 Rev. Litig. at 1079 (*citing* Dan B. Dobbs, The Law of Torts 974, 975, 981-85 (2000)).

---

[14] Section 402A cmt. g provides, in pertinent:

> *g. Defective condition.* The rule stated in this Section applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him.

Section 402A cmt. i provides, in pertinent:

> *i. Unreasonably dangerous.* The rule stated in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer.

[15] "While the strict liability standard of § 2(a) is the superior standard for assessing liability for harm caused by manufacturing defects, the 'risk-utility' balancing of costs and benefits embraced by §§ 2(b) and 2(c) is the proper method of defining defects in design, instructions, and warnings." RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2, Reporter's notes to cmt. a.

Unlike Section 402A's one-size-fits-all approach, section 2 of the Third Restatement (hereinafter, "Section 2") provides separate standards of liability for manufacturing defects, design defects, and defects based on inadequate instructions or warnings. RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2 cmt. a. Under Section 2(b), "A product is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe." RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2(b). Since the shift in paradigm for design defect cases, the majority of the jurisdictions now support and require, whether explicitly or implicitly, the reasonable alternative design requirement.[16] RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2, Reporter's notes to cmt. d.[17] Nevertheless, a minority of jurisdictions still rely on the consumer expectations approach and do not require proof of a reasonable alternative design. *Id.*[18]

---

[16] But a reasonable alternative design is not the exclusive method for establishing design defect. RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2 cmt. b (noting that Section 3, Section 4, and cmt. e to Section 2 provide alternative approaches to establish design defect other than that provided in Section 2(b)).

[17] *See, e.g., General Motors Corp. v. Edwards*, 482 So. 2d 1176, 1191 (Ala. 1985) ("The existence of a safer, practical, alternative design must be proved by showing that: (1) The plaintiff's injuries would have been eliminated or in some way reduced by use of the alternative design . . ."); *Betts v. Robertshaw Controls Co.*, CIV. A No. 89 C-08-28, 1992 Del. Super. LEXIS 528 (Del. Sup. Ct. Dec. 28, 1992) ("Feasibility of designing a safe product must be determined at the time the product was designed."); *Hull v. Eaton*, 825 F.2d 448, 454, 263 U.S. App. D.C. 311 (D.C.Cir. 1987) (applying District of Columbia law) (upheld summary judgment granted to defendant on the grounds that the design proffered by plaintiff was not a reasonable alternative to that originally chosen): *Reeves v. Cincinnati, Inc.*, 176 Mich. App. 181, 439 N.W.2d 326 (1989): *Smith v. Keller Ladder Co.*, 275 N.J. Super. 280, 645 A.2d 1269 (1994); *Cantrell v. Hennessy Indus.*, 829 S.W.2d 875 (Tex. Ct. App. 1992), cert. denied, 508 U.S. 912, 113 S. Ct. 2347, 124 L. Ed. 2d 256 (1993): *Allen v. Minnstar, Inc.*, 8 F.3d 1470 (10th Cir. 1993) (applying Utah law): *St. Gemain v. Husqvarna Corp.*, 544 A.2d 1283 (Me. 1988): *Claytor v. General Motors Corp.*, 277 S.C. 259, 286 S.E.2d 129 (1982); *Krueger v. General Motors Corp.*, 240 Mont. 266, 783 P.2d 1340 (1989); *Banks v. ICI Americas, Inc.*, 264 Ga. 732, 450 S.E.2d 671 (1994).

[18] *See, e.g., Soule v. General Motors Corp.*, 8 Cal. 4th 548, 34 Cal. Rptr. 2d 607, 882 P.2d 298 (1994); *Ray v. BIC Corp.*, 925 S.W.2d 527 (Tenn. 1996); *Sumnicht v. Toyota Motors Sales, I.S.A., Inc.*, 121 Wis. 2d 338, 360 N.W.2d 2 (1984); *French v. Grove Mfg. Co.*, 656 F.2d 295 (8th Cir. 1981) (applying Arkansas law).

### c. The soundest rule of law for the Virgin Islands

■ The Court finds that Section 2(b), read in conjunction with the recently-adopted Section 1, is the soundest rule of law for the Virgin Islands for design defect cases.

As mentioned, the Third Restatement treats products liability significantly different than the Second Restatement in that Section 2 separates the analysis for each type of defect. RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2 cmt. a. Section 402A was created to deal with manufacturing defects and could not be appropriately applied to cases of design defect and defects based on inadequate instructions or warnings.[19] RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 1 cmt. a. On the other hand, Section 2 distinguishes design defects from the other types of defects and establishes a separate standard requiring that the product in a design defect case could have been made safer by a reasonable alternative design. RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2(b).

This new standard provides a clearer test for design defect claims than the standard previously relied upon by the courts in this jurisdiction. Furthermore, this is consistent with the trend of the Virgin Islands courts' routine transition to newer restatements upon approval, or even before final approval, by the American Law Institute,[20] especially in light of the recent adoption of Section 1.

---

[19] In *Manbodh v. Hess Oil V.I.*, 47 V. I. 215, 226 fn. 6 (2005), while the court did not adopt the Third Restatement, the court recognized the ineffectiveness of applying Section 402A to design defects and defects based on inadequate instructions or warnings and viewed "this development [sections 1 and 2 of the Third Restatement] as a welcome departure from the previous, clumsy, formalistic scheme [section 402A of the Second Restatement]."

[20] *See, e.g., Banks*, 55 V.I. 967; *Varlack v. SWC Caribbean, Inc* ., 550 F.2d 171, 13 V.I. 666 (3d Cir. 1977) (held that Restatement (First) of Torts had been superseded by Tentative Draft #19 of the Second Restatement); *DeWindt v. Hess Oil V.I. Corp.*, 15 V.I. 22, 47 (D.V.I. 1978) ("To ascertain what rights the imported employee has under this agreement, we next look to the applicable Virgin Islands contracts law, contained in the tentative drafts of the Restatement (Second) of Contracts."); *Clarenbach v. Consolidated Parts, Inc.*, 17 V.I. 123, 130-31 (Terr. Ct. 1980) ("It is the opinion of this Court . . . that the RESTATEMENT (SECOND) OF JUDGMENTS § 88 (Tent. Draft No. 2, 1975) supersedes the position adopted by the first Restatement with respect to application of collateral estoppel by a non-party.").

## B. Application or the Spoliation Inference

In *Bright v. United Corp.*, 50 V.I. 215 (2007), the Supreme Court stated:

> Before the spoliation inference can be applied "it is essential that the evidence in question be within the spoliator's possession or control," and "it must appear that there has been an actual suppression or withholding of evidence." *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 96, 19 V.I. 642 (3rd Cir. 1983). "Such a presumption or inference arises, however, only when the spoliation or destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent." *Gumbs*, 718 F.2d at 96 (citing 29 AM. JUR. 2D Evidence § 177) (brackets in original).

Plaintiff claimed that Defendant UHP had control over the ultra high pressure water blaster through the Lease Agreement with Defendant Hovensa. However, Plaintiff did not provide any evidence that Defendant UHP "destroyed"[21] the subject ultra high pressure water blaster with fraudulent intent. Plaintiff's conclusory sentence that "it is the common sense observation that UHP is more likely to have been threatened by the blaster" does not establish Defendant UHP's fraudulent intent. Plaintiff noted in his opposition that he will file a separate motion regarding Defendant UHP and Defendant Hovensa's spoliation of evidence. In February 2012, Plaintiff filed a Motion for Sanctions for Spoliation of Evidence, but only against Defendant Hovensa.[22] As such, the spoliation inference should not be applied to Defendant UHP.

---

[21] The subject ultra high pressure water blaster was not actually "destroyed," but at some point after this alleged incident, Defendant Hovensa returned the subject ultra high pressure water blaster to Defendant UHP. It is reasonable to assume that subsequent maintenance was performed by Defendant UHP on the subject ultra high pressure water blaster and likely resulted in the potential destruction of evidence, *to wit*: the subject ultra high pressure water blaster is no longer in the same state it was in at the time of this alleged incident.

[22] On July 8, 2013, the Court entered an Order granting Plaintiff's Motion for Sanctions for Spoliation of Evidence against Defendant Hovensa. On July 30, 2013, Defendant Hovensa filed a Motion for Reconsideration and it is still currently pending before the Court.

## C. Defendant UHP is Entitled to Summary Judgment in its Favor on the Design Defect Claim

██ Here, Plaintiff alleged that the ultra high pressure water blaster he was using contained a design defect, *to wit*: that "whenever one of the water guns on the system was depressurized it would cause a surge to the other gun and related equipment," and that he was injured as a result. Thus, Plaintiff stated a claim under Section 1. The Court now turns to Section 2 for the standard of liability for a design defect claim. Under Section 2(b), a product "is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe." RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY.

Here, despite the fact that Plaintiff advocated for the adoption of Section 2, Plaintiff never once discussed or provided any evidence of a reasonable alternative design. Instead, Plaintiff argued that circumstantial evidence, as permitted by section 3 of the Third Restatement (hereinafter, "Section 3"), will show that the ultra high pressure water blaster was defective in design.

Plaintiff is correct that, under the Third Restatement, Section 3 provides an alternative method for the plaintiff to establish defective design without having to meet the requisites of Section 2(b). RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2 cmt. b (a reasonable alternative design is not the exclusive method for establishing design defect). However, the Supreme Court has yet to address whether Section 3 is applicable in the Virgin Islands. Nevertheless, it is the Court's position that a *Banks* analysis is not necessary at this time, given that even if Section 3 is applicable, Plaintiff did not meet his burden.

██ To satisfy the criteria of Section 3(b),[23] Plaintiff must establish some evidence that the alleged incident was not solely the result of causes

---

[23] Section 3 provides: It may be inferred that the harm sustained by the plaintiff was caused by a product defect existing at the time of sale or distribution, without proof of a specific defect, when the incident that harmed the plaintiff:
(a) was of a kind that ordinarily occurs as a result of product defect; and
(b) was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution. RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 3.

other than defect existing at the time of sale or distribution. Section 3(b). Plaintiff never negated evidence pointing to other reasonable, alternative causes of the alleged incident, *to wit*: Plaintiff's own negligence in operating the East Gun and/or Plaintiff's co-worker's negligence in operating the West Gun. "[P]laintiff has the burden of proof by a preponderance of the evidence; and in any case where there is no doubt that it is at least equally probable that the negligence was that of a third person, the court must direct the jury that the plaintiff has not proved his case." RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 3 cmt. d. Moreover, Plaintiff's own misuse of the equipment could have also been another reasonable, alternative cause of the alleged incident. Again, Plaintiff never negated this cause. In fact, to the contrary, Plaintiff argued adamantly throughout his case that he was not properly trained and he did not have the required knowledge to operate the ultra high pressure water blaster. Thus, Plaintiff has not proved his case under Section 3.

 Furthermore, contrary to Plaintiff's contention, the Court finds that the inner workings of the ultra high pressure water blaster and pressure surges is the type of evidence that is "scientific, technical, or other specialized knowledge" that falls within the scope of FED. R. EVID. 702.[24] Ultra high pressure water blaster is a specialized equipment that most people are not familiar with. Accordingly, most people are not familiar with the inner workings of the ultra high pressure water blaster and whether pressure surges are possible. As such, expert testimony is required as to the alleged defect of the ultra high pressure water blaster and the reasonable alternative design.[25]

According to Plaintiff's expert, Dr. Rentschler's deposition testimony, he will no longer offer an opinion and he no longer has an opinion on whether the equipment malfunctioned. More specifically, Dr. Rentschler

---

[24] In *People of the Virgin Islands v. Todmann*, the Supreme Court stated that the Uniform Rules of Evidence ("URE"), codified as 5 V.I.C. §§ 771-956, applied in the local Virgin Islands courts. *Todmann*, 53 V.I. 431 (2010) (held that the trial court improperly applied FED. R. EVID. 702 because V.I. CODE ANN. tit. 5, § 911(2) applied when a party sought to admit expert testimony in the Virgin Islands courts). However, 5 V.I.C. 911, and the rest or the Uniform Rules of Evidence, was subsequently repealed and replaced with the FRE. *Fontaine v. People*, 56 V.I. 571 n.10 (V.I. 2012).

[25] The Court is not ruling on whether all design defect claims must be supported by expert testimony. The Court is only holding that expert testimony is required here for the ultra high pressure water blaster because it falls within the scope of FED. R. EVID. 702.

testified that: (1) he cannot say whether the equipment actually malfunctioned or not, or at least have any evidence at this point that it did;[26] (2) he has no opinion as to whether or not this accident was a result of equipment malfunction;[27] (3) he will not be offering any opinions as to whether or not a surge in the equipment did or did not actually occur because he does not think there is any evidence, except for testimony, as to whether it actually did or did not;[28] (4) he does not believe there is any evidence that actually demonstrates that there was an equipment malfunction or a surge in the equipment that caused Plaintiff's injury;[29] (5) he will not be opining with regard to equipment malfunctions;[30] and (6) he will no longer offer an opinion on whether the equipment malfunctioned.[31]

---

[26] Rentschler Dep. 33:18-23.

Q And what is your opinion regarding the equipment malfunction?

A Well, at this point, again, as I said before, I don't think anyone can say whether the equipment actually malfunctioned or not, or at least have any evidence at this point that it did.

[27] Rentschler Dep. 33:24-25, 34:1-2.

Q If I understand you correctly then, are you stating that you have no opinion as to whether or not this accident was as a result of equipment malfunction?

A Yes, that would be correct.

[28] Rentschler Dep. 37:4-9.

Q And you won't be offering any opinions as to whether or not a surge in the equipment did or did not actually occur; is that correct?

A That's correct. I don't think there's any evidence, except for testimony, as to whether it actually did or didn't happen.

[29] Rentschler Dep. 43:4-8.

Q And do you have any evidence that, in fact, there was an equipment malfunction or a surge in the equipment that caused Mr. Davis's injury?

A No, I don't believe there's any evidence that actually demonstrates that.

[30] Rentschler Dep. 66:12-18.

Q You also state on page 11 of your opinion that "UHP failed to provide properly functioning equipment which did not cause surges when one gun was turned off." [sic]
 You are not being [sic] opining with regard to equipment malfunctions; is that correct?

A That's correct.

[31] Rentschler Dep. 104:6-9.

Q And you've previously said that you are no longer offering an opinion on whether the equipment malfunctioned; is that right?

A That's correct.

■ Plaintiff is left with his own testimony as the only evidence to support his claim that there was a design defect that caused the surge in the ultra high pressure water blaster. The Court disagrees with Plaintiff's assertion that his testimony of the surge, combined with Patrick Courville and Richard Dupuy's testimony that a surge was not possible, is sufficient to establish that the ultra high pressure water blaster had a design defect. While Plaintiff can certainly testify to his perception of what happened, he cannot testify to the inner workings and the alleged defect of the ultra high pressure water blaster. FED. R. EVID. 701. Similarly, unless Patrick Courville[32] and Richard Dupuy[33] are qualified to testify under FED. R. EVID. 702, they cannot give expert testimony regarding the inner workings and the alleged defect of the ultra high pressure water blaster. Regardless, even if they are qualified as experts, their testimony does not help Plaintiff — both Patrick Courville and Richard Dupuy testified that a surge was not possible in the subject ultra high pressure water blaster.[34] Other than his own testimony, Plaintiff failed to provide any evidence that

---

[32] According to Plaintiff's Counter-Statement of Fact, Patrick Courville was the technician at the time of the alleged incident. (Plaintiff's SOF ¶ 6.) Patrick Courville testified at his deposition that he was trained and certified to operate the ultra high pressure water blaster. (Courville Dep. 12:4-23.) However, it is unclear from the evidence before the Court whether Patrick Courville is qualified to testify in the capacity of an expert witness with regard to the inner workings and the alleged defect of the ultra high pressure water blaster.

[33] According to Plaintiff's Counter-Statement of Fact, Richard Dupuy was designated as Defendant UHP's legal representative for his deposition. (Plaintiff's SOF ¶ 6.) At his deposition, Richard Dupuy testified that there is no way for a surge to occur. (Dupuy Dep. 68:2-12.) However, there is no evidence before the Court that indicate Richard Dupuy received any training and certification and is qualified to testify in the capacity of an expert witness with regard to the inner workings and the alleged defect of the ultra high pressure water blaster. In fact, at Richard Dupuy's deposition, his attorney represented that he was being produced as a fact witness. (Dupuy Dep. 37:13.)

[34] Dupuy Dep. 68:2-12.

Q There's some documentation that this was said. "When his co-worker released the trigger, there was a surge on his end", meaning Mr. Davis's end. Is that considered to be standard operation of the equipment?
MR. BLAKE: Object to the form.
A No, it's not and I don't think it could occur.
Q Why do you say that?
A Because of the system that's set at the pump, there is no way for that surge to occur.

Courville Dep. 104:18-25, 105:1-8.

there was a design defect, or that a surge was even possible in the subject ultra high pressure water blaster.

Plaintiff subsequently pointed out in his supplemental filings that there was a leakage in the East Gun approximately two weeks prior to the alleged incident and that a swivel repair was made on the West Gun three days before the alleged incident. However, again, Plaintiff failed to provide any evidence that a leakage in the East Gun from approximately two weeks prior and/or a swivel repair to the West Gun approximately three days prior will lead to a pressure surge in the East Gun on the day of the alleged incident as the result of a design defect. In fact, as pointed out by Plaintiff in his opposition, both Patrick Courville and Richard Dupuy testified that a surge was not possible in the subject ultra high pressure water blaster. (Summ. J. Opp. at 9-10.)[35]

Plaintiff failed to raise a genuine issue of material fact as to his design defect claim. As such, Defendant UHP's Motion for Summary Judgment will be granted as to Plaintiff's design defect claim.

## II. NEGLIGENCE CLAIMS

### A. Negligence Claim for Failure to Provide Proper Training

In moving for summary judgment with regard to the negligence claim for failure to provide proper training, again Defendant UHP argued that, "the equipment involved is complex and beyond the knowledge and experience of an average person, so expert testimony as to plaintiff's negligent training claim is required." (Summ. J. Mot. at 3-4.) Defendant UHP pointed out that Dr. Rentschler expressly withdrew his opinion that

---

Q Nickey Davis alleges that he told you before his incident that he was feeling surges in the equipment when the other hydroblaster would release the trigger of his gun.
 What is your position on that?
A That can't happen. I don't know what his definition of surge is. Is that to mean that he's feeling —
Q Increased pressure?
A That can't happen.
Q Did he ever complain do [sic] you about that before his accident?
A No. It's like putting the finger over the end of a garden hose. It holds resistance against that pressure. There would be a decrease if anything in the system.

[35] *Supra*, n.34.

Plaintiff was not properly trained in the use of the water jetting equipment. (*Id.* at 3.) Thus, Defendant UHP argued, since Plaintiff will be unable to offer any expert testimony to Defendant UHP's failure to provide proper training, and thereby, unable to prove that said failure caused Plaintiff's alleged injuries, the Court should grant Defendant UHP's Motion for Summary Judgment with regard to Plaintiff's negligence claim for failure to provide proper training. (*Id.* at 3-4.)

██ Aside from Defendant UHP's self-serving, conclusory sentences, Defendant UHP failed to cite to any authority to support his assertion that expert testimony is required for a negligence claim for failure to provide proper training. The Supreme Court has established that in order for a motion to be properly before the court, parties must support their arguments by citing the proper legal authority, statute or rule. *See Bernhardt v. Bernhardt*, 51 V.I. 341, 345-46 (V.I. 2009); *see also Davis v. Varlack Ventures, Inc.*, 59 V.I. 229, 238-239 (V.I. 2013) (The rules of this Court require an appellant's brief to "contain the contentions of the appellant with respect to each of the issues presented, and the reasons therefor, *with citations to the authorities, statutes*, and parts of the record relied on.").

 Although Defendant UHP cited to some cases to support its assertion that expert testimony is required for negligent training and belatedly developed its analysis in its reply brief, this deprived Plaintiff of the opportunity to respond. When an argument is raised for the first time in a reply brief, that argument is deemed waived because Plaintiff will not receive a chance to respond. *Christopher v. People*, 57 V.I. 500, 513 n.7 (V.I. 2012) ("Any argument that is raised for the first time in a reply brief is considered waived, because the [opposing party] will not have a chance to respond."); *see also Benjamin v. AIG Ins. Co. of P.R.*, 56 V.I. 558, 567-68 (V.I. 2012). Here, Defendant UHP's conclusory sentences without the support of any legal authority was a deficient argument in its Motion for Summary Judgment. Plaintiff should not be ambushed by unbriefed, unargued and unsupported claims without the opportunity to respond. By citing cases only in its reply brief, Plaintiff did not have the opportunity to distinguish and refute these cases, and to cite to opposing cases. Permitting Defendant UHP to belatedly brief, argue and support an argument it failed to argue sufficiently in its Motion for Summary Judgment would promote gamesmanship in motion practice where the moving party could simply make conclusory statements without any

support in its motion and wait for the reply brief to cite to legal authority and develop its analysis. Accordingly, Defendant UHP's argument that Plaintiff's negligence claim for failure to provide proper training should be dismissed due to Plaintiff's inability to offer the required expert testimony is considered waived. In its Motion for Summary Judgment, Plaintiff's inability to offer expert testimony was Defendant UHP's sole argument against Plaintiff's negligence claim for failure to provide proper training.[36] As such, Defendant UHP's Motion for Summary Judgment will be denied as to Plaintiff's negligence claim for failure to provide proper training.

### B. Defendant UHP is Not Entitled to Summary Judgment in its Favor on the Negligence Claim for Failure to Provide Proper Training

 Even if Defendant UHP had not waived its arguments against the negligence claim for failure to provide proper training, the facts in the record show that there is a genuine dispute of material fact concerning whether it was Defendant UHP, or Defendant Hovensa, or Plaintiff's employer, Jacobs, that was responsible for providing training to Plaintiff.[37] As such, the trier of fact must determine these issues, and Defendant UHP is not entitled to judgment as a matter of law with regard to the negligence claim for failure to provide proper training.

### C. Negligence Claim for Failure to Provide Proper Personal Protective Equipment

 As noted above, *supra*, n.6, Plaintiff did not plead this negligence claim for failure to provide proper protective equipment in his Complaint and never moved to amend the Complaint. And at this point of the litigation, Plaintiff cannot amend the Complaint without leave from the Court. V.I. SUPER. CT. R. 8. Accordingly, the Court will reject Plaintiff's negligence claim for failure to provide proper protective equipment.

---

[36] In its Reply, Defendant UHP argued for the first time that it had no duty to train Plaintiff. Since Defendant UHP raised this argument for the first time in its reply brief, and thus deprived Plaintiff of the opportunity to respond, this argument is deemed waived. *Christopher*, 57 V.I. at 513 n.7; *see also Benjamin*, 56 V.I. at 567-68. Thus, the Court will decline to address it at this time.

[37] *See supra*, "BACKGROUND."

## CONCLUSION

Defendant UHP's motion for summary judgment will be granted in part and denied in part. There are no genuine issues of material fact in dispute with regard to the design defect claim, and thus, Defendant UHP is entitled to a judgment as a matter of law. In addition to Defendant UHP waiving its arguments against the negligence claim for failure to provide proper training, there are genuine issues of material fact in dispute, and thus, Defendant UHP is not entitled to judgment as a matter of law. An Order consistent with this Memorandum Opinion will follow.